IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38496

| | |
|---|---|
| **MARTHA A. ARREGUI,** | ) |
| | ) |
| **Plaintiff-Appellant,** | ) **Boise, February 2012 Term** |
| | ) |
| **v.** | ) **2012 Opinion No. 75** |
| | ) |
| **ROSALINDA GALLEGOS-MAIN, an** | ) **Filed: May 4, 2012** |
| **individual; FULL LIFE CHIROPRACTIC,** | ) |
| **P.A., an Idaho professional association,** | ) **Stephen W. Kenyon, Clerk** |
| | ) |
| **Defendants-Respondents,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **JOHN and JANE DOES I through X, whose** | ) |
| **true identities are unknown,** | ) |
| | ) |
| **Defendants.** | ) |

_____

Appeal from the District Court of the Third Judicial District of the State of
Idaho, Canyon County. Hon. Renae Hoff, District Judge.

The decision of the district court is <u>affirmed</u>. Costs are awarded to
respondent.

Johnson & Monteleone, L.L.P., Boise for appellant. D. Samuel Johnson
argued.

Greener, Burke & Shoemaker, P.A., Boise, for respondents. Loren K.
Messerly argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This appeal involves a medical malpractice claim brought against a chiropractor for
negligently causing a patient to suffer a stroke after treatment. On or about June 4, 2007,
Appellant, Martha Arregui, sought treatment for her neck and back pain from the Respondent, a
local chiropractor, Dr. Rosalinda Gallegos-Main. Arregui originally alleged that Dr. Gallegos-
Main owed her a duty to treat her in a medically competent manner under Idaho's Medical
Malpractice Act, and failed to do so when Arregui was diagnosed several weeks later as having

1

suffered a stroke after a neck manipulation by Dr. Gallegos-Main. Arregui filed suit against the chiropractor and the facility, Full Life Chiropractic, on April 1, 2009. Dr. Gallegos-Main deposed Arregui's expert witness, Dr. Sarah Tamai, a chiropractor practicing in Oceanside, California, and discovered that she had no knowledge of the local standard of care in Nampa-Caldwell. Consequently, Dr. Gallegos-Main filed a Motion for Summary Judgment arguing that Arregui failed to meet the requirements for establishing a claim for medical malpractice which requires expert testimony regarding the local standard of care. Three days after the deadline, Arregui filed her Memorandum in Opposition to Defendant's Motion for Summary Judgment and included an affidavit from her expert, Dr. Tamai, with a sworn statement that she consulted a local chiropractor and was now familiar with the local standard of care. Dr. Gallegos-Main filed a Motion to Strike the Affidavit of Sarah Tamai as untimely and as a sham affidavit.

After hearing oral arguments on both pre-trial motions, the district court granted the Motion to Strike Dr. Tamai's affidavit and Dr. Gallegos-Main's Motion for Summary Judgment. Arregui filed a Motion for Reconsideration, claiming that the court erred in striking Dr. Tamai's affidavit and presented a new argument in the alternative that the court improperly granted summary judgment because the Medical Malpractice Act does not apply to chiropractors. The district court entered a final order denying Arregui's Motion for Reconsideration. Arregui now appeals to this Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On or about June 4, 2007, Appellant, Martha Arregui ("the Patient"), sought chiropractic treatment of her back and neck pain with Respondent, Dr. Rosalinda Gallegos-Main. Dr. Gallegos-Main diagnosed the Patient's presented symptoms as torticollis and used a Pettibon Tendon Ligament Muscle Stimulator device and an ArthroStim device to loosen the muscles in the Patient's neck. The Patient returned to Dr. Gallegos-Main's office later that day for more treatment and to discuss an on-going treatment plan. The Patient alleges that during one of the two visits to Dr. Gallegos-Main's office, the chiropractor performed a cervical adjustment (commonly referred to as a neck manipulation). Dr. Gallegos-Main denies that she ever performed an adjustment on the Patient and the chiropractor's records do not indicate that a cervical adjustment was ever performed. The next day, on June 5, 2007, the Patient went to the emergency room complaining of a painful, stiff neck and dizziness. The Patient was evaluated, given a diagnosis of torticollis, and sent home. Several weeks later, the Patient went to another

2

health care provider who diagnosed her as having suffered a posterior inferior cerebellar artery stroke, referred to as a "PICA stroke."

The Patient filed her Complaint on April 1, 2009, suing Respondents Dr. Gallegos-Main in her capacity as a health care professional, and Full Life Chiropractic, P.A., in its capacity as a chiropractic facility (collectively referred to as "Dr. Gallegos-Main"). In her Complaint, the Patient alleged that Dr. Gallegos-Main owed the Patient a duty as a health care professional to treat her in a non-negligent manner under the Medical Malpractice Act. *See* I.C. §§ 6-1012–1013. The Patient argues that Dr. Gallegos-Main's negligent treatment of the Patient's torticollis proximately caused the Patient to suffer a stroke. On August 16, 2010, the Patient disclosed Dr. Sarah Tamai as her expert witness to testify at trial about whether Dr. Gallegos-Main breached the standard of care ordinarily exercised by chiropractors working in the Nampa-Caldwell area under similar circumstances.

On October 15, 2010, the Patient submitted Dr. Tamai's expert report outlining Dr. Tamai's opinions on Dr. Gallegos-Main's alleged breach of care in her treatment of the Patient on or about June 4, 2007. A few days later, on October 19, 2010, counsel for Dr. Gallegos-Main deposed Dr. Tamai in Oceanside, California. In her deposition, Dr. Tamai acknowledged that she had no personal knowledge of the local standard of care for chiropractors in the Nampa-Caldwell area. Near the end of Dr. Tamai's deposition, she testified that she was not planning on altering her opinion "[u]nless something in terms of evidence comes up that someone would ask me to render my opinion upon."

On October 26, 2010, Dr. Gallegos-Main filed a Motion for Summary Judgment, arguing that the Patient failed to present any direct expert testimony establishing the local standard of care among chiropractors, and as such, the Patient failed to submit evidence that Dr. Gallegos-Main breached the applicable standard of care in her treatment of the Patient. Three days after the deadline to file opposing affidavits, on November 12, 2010, the Patient filed her Memorandum in Opposition to Defendant's Motion for Summary Judgment accompanied with an affidavit from Dr. Tamai. In opposing summary judgment, the Patient contended that Dr. Tamai contacted a local Idaho chiropractor and familiarized herself with the applicable standard of care as set forth in Dr. Tamai's affidavit. On November 16, 2010, Dr. Gallegos-Main filed a Motion to Strike the Affidavit of Sarah Tamai, arguing that the affidavit was untimely under Idaho Rule of Civil Procedure 56(c), that it was a sham affidavit, and that it did not satisfy the

3

foundational requirements of admissibility under Idaho Rule of Civil Procedure 56(e) and Idaho Code section 6-1013(c)(1).

On November 23, 2010 the district court held a hearing on the Motion for Summary Judgment and the Motion to Strike. The court granted the Motion to Strike Dr. Tamai's affidavit, ruling that it was untimely and contradicted Dr. Tamai's prior deposition testimony. The court then granted the Motion for Summary Judgment, finding that based on Dr. Tamai's deposition, the Patient failed to prove that Dr. Tamai was familiar with the local standard of care and thereby was not allowed to offer expert testimony indicating that Dr. Gallegos-Main was negligent under Idaho Code section 6-1013. On December 2, 2010, the court entered Final Judgment dismissing the case. On December 3, 2010, the Patient filed a Motion for Reconsideration under Idaho Rule of Civil Procedure 11(a)(2)(B), arguing that the court erred in striking Dr. Tamai's affidavit and in granting summary judgment in favor of Dr. Gallegos-Main. In the Patient's Memorandum in Support of Plaintiff's Motion for Reconsideration, the Patient argued that the affidavit was not a sham affidavit and that Dr. Tamai laid a proper foundation for the affidavit to be admissible under Idaho Code section 6-1013(c)(1). Alternatively, the Patient also raised a new argument that the Medical Malpractice Act does not apply to chiropractic physicians. Dr. Gallegos-Main filed her opposing brief, arguing that the Patient improperly filed her Motion for Reconsideration one day after the court entered its Final Judgment dismissing all claims.

On January 27, 2011, the court held a hearing on the Motion for Reconsideration and concluded that no error was committed. The lower court considered Dr. Tamai's affidavit, which was timely filed regarding the Motion for Reconsideration and found that it was still a sham affidavit. The court ruled orally from the bench, without drafting a memorandum decision, and did not articulate its ruling in great detail, but the record shows that the district court did consider the admissibility of the affidavit and found that it lacked a proper foundation to establish admissibility as expert testimony. The court also considered the Patient's alternative argument and held that Idaho Code sections 6-1012 and 6-1013 applied to chiropractors. The Patient timely filed her Notice of Appeal on January 28, 2011.

### III. ISSUES ON APPEAL

**1.** Whether the district court erred in striking Dr. Tamai's affidavit?

**2.** Whether the district court erred in granting summary judgment?

**3.** Whether the district court erred in denying the Patient's motion for reconsideration?

**4.**     Whether Dr. Gallegos-Main is entitled to attorney's fees on appeal?

## IV. STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion. *Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004) (internal citations omitted). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When considering whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Bingham Mem'l Hosp.*, 130 Idaho 420, 422, 942 P.2d 544, 546 (1997).

The admissibility of expert testimony, however, is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002) (citing *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 940 P.2d 1142 (1997); *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994)).

> The liberal construction and reasonable inferences standard does not apply, however, when deciding whether or not testimony offered in connection with a motion for summary judgment is admissible. The trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible.

*Dulaney*, 137 Idaho at 163, 45 P.3d at 819 (internal citations omitted). This Court reviews a trial court's evidentiary rulings under the abuse of discretion standard. *Id.* (citing *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 995 P.2d 816 (2000)).

## V. ANALYSIS

### A.     The District Court Did Not Err in Striking the Affidavit of Dr. Tamai

*1.     Dr. Tamai's Affidavit Was Untimely*

On October 26, 2010, Dr. Gallegos Main filed her Motion for Summary Judgment based on the argument that the Patient failed to present any direct expert testimony regarding the local standard of care and whether Dr. Gallegos-Main breached the applicable standard of care in her treatment of the Patient. In accordance with Idaho Rule of Civil Procedure 56(c), the adverse party must serve opposing affidavits at least fourteen (14) days prior to the date of the hearing. The court scheduled the hearing date for November 23, 2010. Therefore, the Patient had to serve any opposing affidavits by November 9, 2010 in order to be timely filed under Rule 56(c). The

Patient filed her Memorandum in Opposition to Defendant's Motion for Summary Judgment accompanied with Dr. Tamai's affidavit on November 12, 2010, three days after the deadline passed. Dr. Gallegos-Main filed a Motion to Strike the Affidavit of Sarah Tamai. At the hearing, the court concluded that Dr. Tamai's affidavit was untimely filed under Rule 56(c). After noting that Dr. Tamai's affidavit testimony directly conflicted with her earlier deposition testimony regarding the applicable standard of care, the court held that Dr. Tamai's affidavit was a sham affidavit because it was manufactured to produce a genuine issue of material fact to defeat summary judgment.

In *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, this Court explained that the purpose of the rule requiring the adverse party to serve opposing briefs and affidavits no less than fourteen days before the hearing is to "give the moving party an adequate opportunity to respond." 133 Idaho 1, 5, 981 P.2d 236, 240 (1999). The record clearly shows that the Patient filed her memorandum opposing summary judgment with her opposing affidavit on November 12, 2010. Therefore, Dr. Gallegos-Main received Dr. Tamai's affidavit just eleven days before the hearing date. Furthermore, the Court finds that there was no abuse of discretion. The lower court recognized its discretion, acted within the bounds of its discretion, and reached a decision through the exercise of reason. Therefore, this Court affirms the district court's grant of Dr. Gallegos-Main's Motion to Strike because Dr. Tamai's affidavit was untimely filed pursuant to I.R.C.P. 56(c) and left Dr. Gallegos-Main without an adequate opportunity to respond at the hearing.

2.      *This Court Will Not Address the Sham Affidavit Issue*

Idaho has not recognized the sham affidavit doctrine and because the affidavit was untimely, it was properly stricken and this Court need not address the issue here. The Court will not use this appeal as an opportunity to create a new doctrine when it is unnecessary to do so.

**B.      The District Court Did Not Err in Granting Summary Judgment**

After striking Dr. Tamai's affidavit as untimely, the court analyzed whether to grant the motion for summary judgment based on the evidence presented in Dr. Tamai's deposition. The district court concluded that "until the filing of that untimely affidavit, [Dr. Tamai] was not familiar with the local standard of care."

A movant is entitled to summary judgment if the nonmoving party fails to present a sufficient showing of an essential element of the claim. "To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that

the defendant health care provider negligently failed to meet the applicable standard of health care practice." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. Further, Idaho Code section 6-1012 states:

> In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care . . . such claimant or **plaintiff must**, as an essential part of his or her case in chief, **affirmatively prove by direct expert testimony** and by a preponderance of all the competent evidence, **that such defendant** then and there **negligently failed to meet the applicable standard of health care practice of the community** in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning.

(Emphasis added).

Throughout the deposition, Dr. Tamai repeatedly illustrated her lack of knowledge regarding the applicable standard of care in the Nampa-Caldwell area. Dr. Tamai is a chiropractor licensed in the state of California. During her deposition, she testified that she had never been to Idaho and had never spoken with an Idaho chiropractor about the practice of care. Dr. Tamai testified that she did not know whether there were different standards of care for chiropractors practicing in Idaho than chiropractors practicing in California. Dr. Tamai identified two national organizations that provide guidelines for chiropractic medicine, but did not know whether the guidelines were followed in Idaho. Based on Dr. Tamai's deposition testimony, this Court affirms the district court's grant of summary judgment because the Patient failed to present expert testimony that Dr. Gallegos-Main failed to meet the applicable standard of care when Dr. Tamai could not testify that she knew the local standard of care in the Nampa-Caldwell area at the time of the injury.

**C.     The District Court Did Not Err in Denying the Patient's Motion for Reconsideration**

On December 3, 2010, the Patient moved under Rule 11(a)(2)(B) for the lower court to reconsider its order granting the motion to strike Dr. Tamai's affidavit and its order granting summary judgment. The Patient again raised Dr. Tamai's affidavit on reconsideration. The Patient argued that Dr. Tamai's affidavit was not a sham affidavit and that a proper foundation had been laid for admitting the opinions set forth in Dr. Tamai's affidavit. The Patient raised a new argument and alternatively contended that Idaho Code sections 6-1012 and 6-1013 do not apply to claims brought against chiropractors. Dr. Gallegos-Main argued that the Patient could not bring a motion for reconsideration under Rule 11(a)(2)(B) after a final judgment had been

7

entered and asserted that the Patient should have filed a motion to amend or alter the judgment under Rule 59(e). Dr. Gallegos-Main also argued that Dr. Tamai's affidavit presented an insufficient foundation to be admissible as expert testimony in a medical malpractice case.

The court held a hearing on the Patient's Motion for Reconsideration and made an oral ruling that the court did not err in striking Dr. Tamai's affidavit as untimely or in granting summary judgment. On reconsideration, the court considered Dr. Tamai's affidavit and found that it failed to set forth an adequate foundation to be admissible. Although the lower court failed to articulate its reasoning with specificity, this Court is convinced that the district court analyzed whether Dr. Tamai's affidavit was admissible. The court explained that it found *Dulaney* to be "educational and dispositive" regarding the four requisite elements needed for expert testimony to be admissible under Idaho Code section 6-1013 and found *Dulaney* to be "instructional on the arguments of whether [Idaho Code sections] 6-1012, 6-1013 would apply to chiropractor standard of care." Specifically, the lower court stated:

> I concluded previously that clearly this did qualify under the sham affidavit doctrine as what was called manufactured testimony to create an issue of fact to prevent this court from ruling on summary judgments. And I also pointed out that Ninth Circuit ruling[1], **the *Dulaney* case, was educational and dispositive. [The Patient's lawyer] mentioned those four elements**. I think that that case is also probably instructional on the arguments of whether 6-1012, 6-1013 would apply to chiropractor standard of care. I did strike the affidavit and then consequently granted defendants' motion for summary judgment dismissing all of the plaintiff's claims. This matter comes before me today on a motion to reconsider after final judgment was entered, and this motion comes before me under IRCP 11(a)(2)(B). . . . Plaintiff argues that the Tamai affidavit was not a sham affidavit, and the record is in conflict on the issue of whether or not Dr. Main actually performed a cervical adjustment. Plaintiff further argues that sufficient foundation was laid for Tamai's opinions and, alternatively, that [s]ection 6-1012 and 6-1013 do not apply to chiropractors. . . . I conclude that the plaintiff has failed to demonstrate that the motion in this case should be granted, and **I stand on the prior conclusions, page 36 through 40 of the transcript of the prior hearing**. Having closely reviewed that, I cannot conclude that there was error or that reconsideration should be granted here today.

(Emphasis added).

This language, where the court specifically referenced the four elements of the *Dulaney* case, coupled with the court's analysis in its prior ruling on Dr. Gallegos-Main's Motion for

---

[1] This Court is of the belief that the lower court was confused and mistakenly referenced the "Ninth Circuit ruling" before explaining that the *Dulaney* case was educational and dispositive. After reviewing the record, it is evident that the only Ninth Circuit cases cited were in support of the argument that Dr. Tamai's affidavit was a sham affidavit. Furthermore, when the court referenced the four elements after citing the *Dulaney* case, it becomes clear that the court was contemplating the foundation issue.

Summary Judgment, sufficiently persuades this Court that the lower court considered the admissibility of Dr. Tamai's affidavit as expert testimony and used its discretion in ruling that the affidavit lacked an adequate foundation under *Dulaney*. The transcript from the district court's prior hearing, specifically pages 36 through 40, shows that the court heavily relied on the *Dulaney* case to analyze whether Dr. Tamai's deposition testimony had the proper foundation to be admissible expert testimony required by Idaho Code section 6-1013. In that prior ruling, the court identified the four elements needed to establish the foundation and quoted the *Dulaney* case as follows:

> To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice. In order for such expert testimony to be admissible, the plaintiff must lay the foundation required by Idaho Code § 6-1013. To do so, the plaintiff must offer evidence showing: (a) that such opinion is actually held by the expert witness; (b) that the expert witness can testify to the opinion with a reasonable degree of medical certainty; (c) that the expert witness possesses professional knowledge and expertise; and (d) that the expert witness has actual knowledge of the applicable community standard of care to which his expert opinion testimony is addressed.

*Dulaney*, 137 Idaho at 163, 45 P.3d at 819.

The court then concluded that Dr. Tamai "was not familiar with the local standard of care." The four factors outlined in the *Dulaney* case, and emphasized by the district court, are used to determine the admissibility of both affidavit testimony and deposition testimony. *See id.* The fact that the lower court specifically cited to its prior ruling where it announced the four elements necessary to establish an adequate foundation to be admissible as expert testimony indicates that the court did in fact consider whether Dr. Tamai's affidavit lacked foundation to be admissible. It is irrelevant that the court's prior ruling was based on Dr. Tamai's deposition testimony because the four foundational elements to determine the admissibility of an expert witness also apply to affidavit testimony.

Furthermore, the district court was cognizant of the foundation concern because the issue of whether Dr. Tamai's affidavit presented an adequate foundation was raised and argued by both attorneys during the hearing on the Patient's Motion for Reconsideration. For instance, during the hearing on the motion to reconsider, the Patient's attorney argued:

> We believe that under the *Dulaney* case, your Honor, there are four elements, foundational elements, for the admission of testimony from experts in a case like this. I don't think I need to go through each and every one of those elements.

9

They've been briefed before the [c]ourt. We think they've all clearly been satisfied in this particular case, your Honor.

Then, Dr. Gallegos-Main's counsel addressed the issue of foundation during the hearing as follows:

I would also speak briefly, your Honor, to the issue of foundation. In addition to the fact that this affidavit directly contradicted the deposition, the affidavit also provided none of the foundation that's required of affidavits through the case law.

The case law's [sic] been clear that Idaho courts will strike down an affidavit that doesn't provide the foundation and will grant summary judgment on that basis, the *Dulaney* case being the case that we've cited to and that was also referenced by plaintiff's counsel.

Plaintiff's counsel noted that their affidavit indicated that Dr. Tamai talked to a local physician and confirmed it was the same standard of care in Idaho. And, frankly, that is not just a summation, that is pretty much all that was in that affidavit, your Honor. It said nothing about who the local physician was, what his experience was, how he knew what the local standard of care was, just a conclusory statement that it's the same standard of care.

Again, without beating what we've already briefed, without being too repetitive about that, that's not sufficient to meet foundation to have that testimony be admissible, your Honor.

After analyzing all of the circumstances surrounding the district court's oral ruling, it becomes clear that the parties requested the court to consider whether Dr. Tamai's affidavit had an adequate foundation to be admissible as expert testimony under the four elements of *Dulaney*.

This Court reviews a trial court's decision of whether to grant or deny a motion for reconsideration under an abuse of discretion standard. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 560, 212 P.3d 982, 990 (2009). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008) (citing *West Wood Invs., Inc. v. Acord*, 141 Idaho 75, 82, 106 P.3d 401, 408 (2005)). Idaho Rule of Civil Procedure 11(a)(2)(B) states "[a] motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment." The court considered Dr. Gallegos-Main's argument that the Patient's motion should have been brought under Rule 59(e), but recognized that a motion for reconsideration pursuant to Rule 11(a)(2)(B) was proper, even if filed after final judgment had been entered, because the Patient sought reconsideration of an interlocutory order. When

10

considering a motion for reconsideration under Rule 11(a)(2), the district court should take into account any new facts, law, or information presented by the moving party that bear on the correctness of the district court's interlocutory order. *Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho,* 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990). However, new evidence is not required and the moving party can re-argue the same issues in addition to new arguments.

This Court affirms the district court's denial of the Patient's Motion for Reconsideration for the following reasons. The district court did not err in striking Dr. Tamai's affidavit because it was untimely filed three days after the deadline to serve opposing affidavits for summary judgment had passed. Without Dr. Tamai's affidavit, the court was left to analyze the motion for summary judgment based on Dr. Tamai's deposition, which clearly showed that she was not aware of the local standard of care. As such, the court properly granted summary judgment because the Patient failed to present prima facie evidence that Dr. Gallegos-Main failed to meet the applicable community standard of chiropractic care. Then, the court correctly considered Dr. Tamai's same affidavit when it was raised on reconsideration, because it was timely filed for the Motion for Reconsideration. Again, although the district court could have more clearly articulated its ruling on whether Dr. Tamai's affidavit lacked foundation to be admissible as expert testimony, this Court finds that the lower court did consider the argument and found *Dulaney* to be dispositive.

The Patient did not lay an adequate foundation to show that Dr. Tamai had actual knowledge of the applicable standard of care for chiropractors in the Nampa-Caldwell area. In her affidavit, Dr. Tamai explained that she familiarized herself with the applicable standard of care by stating:

> I have educated myself regarding the local standards of care prevailing in the Nampa-Caldwell area of Idaho, as they existed in June 2007. In addition to my education and experience, I have spoken with a local chiropractor, who maintained a chiropractic practice, in Caldwell, Idaho, in June 2007, the time period relevant to this litigation, as it was the time period, when Defendant chiropractically [sic] treated Plaintiff, Martha Arregui. It is my understanding that this chiropractor was appropriately licensed in Idaho as a chiropractor and maintained an active practice of chiropractic medicine during the relevant period. This chiropractor indicated to me that he was familiar with the local standards of care for performing chiropractic procedures in the Nampa and Caldwell communities by licensed chiropractors at the time that the chiropractic care at issue in this case was rendered to the patient. This physician further confirmed to me that the local standards of care at that time were, in all respects, consistent with and, in fact, identical to the standards of care upon which my opinions in this

case have been based, namely, the standards of care in Oceanside, California in June 2007.

An expert testifying about the applicable standard of care in medical malpractice cases "must show that he or she is familiar with the standard of care for the particular health care professional for the relevant community and time. The expert must also state how he or she became familiar with that standard of care." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820 (internal citations omitted). In Dr. Tamai's affidavit, she never identified the local chiropractor, she did not describe the type of chiropractic practice he ran, nor how he became aware of the local standard of care, how long he practiced in the Nampa-Caldwell area, or whether he was familiar with torticollis and the specific procedures allegedly used on the Patient. It is not enough to show that an out of state medical expert is a member of the same specialty as the defendant physician. Rather, in a medical malpractice case, it must be shown that the expert possesses sufficient knowledge of the specific procedures used by the defendant physician as the alleged malpractice. *See Suhadolnik v. Pressman*, 151 Idaho 110, 115–16, 254 P.3d 11, 16–17 (2011). Here, the Patient merely asked the district court to believe Dr. Tamai's conclusory statements that the local unidentified chiropractor was familiar with the standard of care and because Dr. Tamai spoke with him, she was also now familiar with the local standard of care. Such meager information is insufficient.

In *Dulaney*, this Court held that Dulaney "failed to lay an adequate foundation showing that her out-of-state medical experts had adequately familiarized themselves with the standard of care" when Dulaney presented an out-of-state expert's affidavit relying upon an anonymous professor's knowledge of the standard of care. *Dulaney*, 137 Idaho at 169, 45 P.3d at 825. In *Dulaney*, the affidavit provided much more detail and facts regarding the anonymous professor's knowledge and experience; nevertheless, the Court still found the affidavit lacked foundation because it did not relate the professor's experience to the time period in question. *Id.* Based on the sparse explanation of how Dr. Tamai became familiar with the local standard of care, this Court finds that the district court did not err in ruling that the Patient failed to lay an adequate foundation for the admission of Dr. Tamai's affidavit testimony. The district court also ruled that Dr. Tamai's affidavit was a sham affidavit because it was manufactured to create a genuine issue of fact to preclude summary judgment. However, as stated earlier, this Court need not address that matter since the affidavit was inadmissible expert testimony on other grounds.

Finally, the lower court correctly considered the Patient's new argument and held that the Medical Malpractice Act, contained in Idaho Code sections 6-1012 and 6-1013, applies to

12

chiropractors. Although the district court did not articulate the specific grounds supporting her decision, this Court agrees with its interpretation of the statute. According to the plain language of Idaho Code section 6-1012, the Medical Malpractice Act applies to "any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or ***other provider of health care*** . . . ." (Emphasis added). In *Jones v. Crawforth*, this Court found that a cell saver technician was a health care provider protected under Idaho Code section 6-1012. 147 Idaho 11, 15, 205 P.3d 660, 664 (2009). Because this Court previously interpreted the statute as being broad enough to extend "other provider of health care" to a cell saver technician, the lower court's decision extending the statute to chiropractors is equally reasonable and is a valid statutory interpretation. The lower court's interpretation is further supported by the fact that both the Chiropractic Practice Act and Idaho's Workers' Compensation Law define the term "physician" to include chiropractors. *See* I.C. § 54-703(3); I.C. § 72-102(25). The Court finds that the district court recognized its discretion in granting or denying the Patient's Motion for Reconsideration, considered all the issues presented, applied the correct legal standard, acted within the bounds of its discretion, and reached its decision through an exercise of reason. Therefore, the district court did not err in denying the Patient's Motion for Reconsideration.

**D.      Dr. Gallegos-Main Is Not Entitled to Attorney's Fees**

Dr. Gallegos Main argues that she is entitled to attorney's fees on appeal under I.C. § 12-121. Idaho Code section 12-121 "permits an award of attorney fees in a civil action to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Newberry v. Martens*, 142 Idaho 284, 292–93, 127 P.3d 187, 195–96 (2005). Although Dr. Gallegos-Main is the prevailing party, the Patient's arguments are not frivolous or unreasonable. Furthermore, "[w]here an appeal turns on the question of law, an award of attorney feed [sic] under this section is proper if the law is well settled and the appellant has made no substantial showing that the district court misapplied the law." *Elec. Wholesale Supply Co., Inc. v. Nielson*, 136 Idaho 814, 828, 41 P.3d 242, 256 (2001) (citing *Andrews v. Idaho Forest Indus., Inc.*, 117 Idaho 195, 198, 786 P.2d 586, 589 (Ct. App. 1990)). On her Motion for Reconsideration, the Patient properly raised a new argument regarding the statutory interpretation of Idaho Code sections 6-1012 and 6-1013. This precise issue has not yet been addressed by the Court. Therefore, this Court finds that the appeal was not unreasonable and denies Dr. Gallegos-Main's request for attorney's fees.

## VI. CONCLUSION

13

This Court affirms the district court's decision to grant the Motion to Strike Dr. Tamai's affidavit as untimely with respect to the Motion for Summary Judgment, affirms the district court's grant of summary judgment in favor of Dr. Gallegos-Main, and upholds the court's denial of the Patient's Motion for Reconsideration. No attorney's fees are awarded on appeal. The Court awards costs on appeal to Dr. Gallegos-Main.

Justice J. JONES, CONCURS.

HORTON, J., specially concurring.

I join in the majority's opinion, save for Part V.C, regarding the Patient's Motion for Reconsideration. I join in that portion of Part V.C which holds that the requirements of I.C. §§ 6-1012 and 6-1013 apply to medical malpractice actions against chiropractors. However, I am unable to concur in the majority's decision to affirm the district court's determination that Dr. Tamai's affidavit failed to satisfy the foundational requirements of I.C. § 6-1013, as interpreted by this Court in *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 45 P.3d 816 (2002). Although I have grave misgivings as to whether the Court has elevated the requirements for an expert's affidavit beyond the requirements of I.C. § 6-1013,[2] I am unable to join this part of the decision for one simple reason: this majority purports to affirm a decision that the district court simply did not make.

The majority states that "the record shows that the district court did consider the admissibility of the affidavit and found that it lacked a proper foundation to establish admissibility as expert testimony." The majority later states: "On reconsideration, the court considered Dr. Tamai's affidavit and found that it failed to set forth an adequate foundation to be admissible." I have read, and re-read, the district court's oral explanations for its decision to strike Dr. Tamai's affidavit and its explanation for the denial of the motion for reconsideration. There is simply no basis for the majority's determination that the district court struck the affidavit due to a failure of foundation.

The majority correctly observes that the attorneys advanced arguments regarding the sufficiency of the foundation for the admissibility of Dr. Tamai's affidavit. However, I believe

---

[2] One example is the suggestion that the identity of the local health care provider with whom a Plaintiff's expert consults must be disclosed as part of the foundation for that opinion. As a former trial court judge, I was called upon to resolve several discovery disputes in which defense counsel sought to learn the identity of the individuals consulted by Plaintiffs' experts in the course of familiarizing themselves with the applicable standard of health care practice. In the course of those proceedings, it was clear that there is a fundamental disagreement among district judges as to whether this information must be disclosed. Although not necessary to resolution of this appeal, the majority appears to decide this question in a fashion which will be welcomed by the insurance defense bar and medical community.

14

that the majority mistakenly relies on those arguments to support its conclusion that the district court found that Dr. Tamai's affidavit lacked adequate foundation. A judge's decision to rule in one party's favor does not mean that the judge has accepted every argument advanced by that party. The prevailing party does not have to persuade the judge of the correctness of its position on every issue in order to win; the party must only persuade the judge that it is correct on one dispositive issue. Thus, judges frequently accept some arguments advanced by a party, reject other arguments advanced by that party, and ultimately rule in favor of that party. In so doing, they frequently do not bother to address issues that they deem to be immaterial to their decision.

It is for this reason that this Court evaluates a judge's decision on the basis of the explanation provided by the judge, not on the arguments advanced by the parties. Thus, I will direct my attention to the district court's comments explaining its decision. Unfortunately, in order to demonstrate the reason that I disagree with the majority's assertion that the district court struck Dr. Tamai's affidavit on the basis of a lack of foundation, I must consider everything that the district court said when ruling on the motion. The following is the entirety of the district court's comments regarding the motion to strike:

> The defense has moved to strike the affidavit of Sarah Tamai that was filed on November 15th, 2010 in support of plaintiff's opposition to the motion for summary judgment.
> The defendant argues first that the affidavit is untimely under Rule 56(c) and that it is inadmissible under 56(e) and case law. 56(c) Rule of Procedure addresses summary judgment and provides, if the adverse party desires to serve opposing affidavits, the party must do so at least fourteen days prior to the date of hearing.
> The defendant further argues that this is a sham affidavit -- and that is the term that has been used in the case law -- because it contradicts Dr. Tamai's deposition testimony and was merely presented today to prevent summary judgment.
> Boise Tower versus Washington, this is a District of Idaho 2007 case, L 1035158, addresses the issue of sham affidavits in the Ninth Circuit.
> And I quote, "The 'sham affidavit' doctrine prevents the use of manufactured testimony as a means of creating an issue of fact to get past summary judgment. Courts have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn testimony by, say, filing a later affidavit that flatly contradicts the party's earlier sworn deposition without explaining the contradiction or attempting to resolve the disparity. The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting prior deposition testimony."
> **I conclude that the affidavit was not filed timely and that there was no request for shortening of time. I further conclude that the affidavit clearly contradicts the prior deposition testimony and that it was clear that at that**

**time, Dr. Tamai was not aware of the local standard of care in this community.**

**Pursuant to Rule 56(c), the opposing affidavit was not timely filed and clearly contradicts prior testimony. As a result I am going to grant the motion to strike the affidavit** which leaves the remaining issue, then, of summary judgment.

(Emphasis added).

The district court's decision to strike is notable in that the word "foundation" is utterly absent, as is any discussion of *Dulaney*. The only bases for the district court's decision that I can discern are those that I have highlighted. These are the determinations that the affidavit was not timely filed and that Dr. Tamai's affidavit was a "sham" because it contradicted her earlier deposition testimony.

The district court's decision with regard to the motion for summary judgment did address *Dulaney*. This is the entirety of the district court's decision regarding summary judgment:

Having granted the motion to strike based on the plaintiff's failure to meet its burden with regard to local of standard of care and with regard to contradictory statements, I am called upon at this time to look at the summary judgment issue which the parties have been arguing here before me this morning.

And, of course, I cite to Idaho Code Section 6-1012 and 6-1013. 6-1012 clearly provides that as an essential part of the plaintiff's case in chief, they affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence that such defendant, then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of the purveyor -- alleged purveyor of negligence.

And I also cite, then, 6-1013, which provides under subsection (c) that such expert witness possessed professional knowledge and expertise coupled with the actual knowledge of the applicable said community standard to which his or her opinion testimony is addressed. It then goes on to say that the section shall not be construed to prohibit or preclude a competent expert who resides elsewhere from adequately familiarizing himself with the standards and practices of a particular area.

In looking at the issue of summary judgment, I also am relying heavily on Dulaney versus Saint Alphonsus, 137 Idaho 160, and that's a 2002 case and the cite that Mr. Messerly in his responding argument made.

And that is, "The liberal construction and reasonable inferences standard does not apply, however, when deciding whether or not testimony offered in connection with a motion for summary judgment is admissible." And I'm going to leave out the cites.

"The trial court must look at the witness's affidavit or deposition testimony and determine whether it alleges facts which, if taken true, would render the testimony of that witness admissible."

16

"To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of care. In order for such expert testimony to be admissible, the plaintiff must lay the foundation required by 6-1013. To do so, the plaintiff must offer evidence showing: (a) that such opinion is actually held by the expert witness; (b) that the expert witness can testify to the opinion with a reasonable degree of medical certainty; (c) that the expert witness possesses professional knowledge and expertise; and (d) that the witness has actual knowledge of the applicable standard of care to which his opinion testimony is addressed."

**Now plaintiff has responded with the affidavit in this matter. However, the evidence in this case indicates that that affidavit contradicts prior opinions of Dr. Tamai from a deposition previously held, and that until the filing of that untimely affidavit, she was not familiar with the local standard of care.**

As a result, I find that summary judgment is appropriately granted in this case as there is no issue -- genuine issue of material fact.

All of my stated findings and conclusions will stand for the record. Mr. Messerly, you shall draft an order striking the affidavit and granting summary judgment, submit a copy to opposing counsel.

(Emphasis added).

I do agree with the majority's observation that the district court "did not articulate its ruling in great detail."  Unlike the majority, I cannot interpret the highlighted language as indicating that the affidavit lacked adequate foundation and was therefore inadmissible.  Rather, it is evident to me that the district court's evaluation of the sufficiency of the evidence to withstand the motion for summary judgment was focused upon the evidence set forth in Dr. Tamai's deposition. That testimony unambiguously established that, at the time of the deposition, Dr. Tamai had no familiarity whatsoever with the applicable standard of health care practice. Thus, assuming that the district court did not err in striking the affidavit and properly applied I.C. §§ 6-1012 and 6-1013, it was compelled to grant summary judgment.

My conviction that the district court did not strike the affidavit as lacking foundation is reinforced by the statements of the district court when ruling on the motion for reconsideration. The entirety of that ruling is as follows:

All right. Thank you. The defendant previously moved me to strike the affidavit of Sarah Tamai, the chiropractor, that was filed on November 15th of 2010. **I previously ruled that the plaintiff filed the affidavit late and that the affidavit contradicted prior deposition testimony, that the expert Tamai was not aware of the local standard of community care.**

**At the time of her deposition, she was not aware of that. And in the affidavit, she was -- in response, she became aware, at least in**

17

**communications with a chiropractor here, of the local standard of care in this community.** And as Mr. Johnson pointed out, I find no -- no deception on the part of the chiropractor.

**However, I concluded previously that clearly this did qualify under the sham affidavit doctrine** as what was called manufactured testimony to create an issue of fact to prevent this Court from ruling on summary judgments.

And I also pointed out that the 9th Circuit ruling, the Dulaney case, was educational and dispositive. Mr. Johnson mentioned those four elements. I think that that case is also probably instructional on the arguments of whether 6-1012, 6-1013 would apply to chiropractor standard of care.

I did strike the affidavit and then consequently granted defendants' motion for summary judgment dismissing all of the plaintiff's claims.

This matter comes before me today on a motion to reconsider after final judgment was entered, and this motion comes before me under IRCP 11(a)(2)(B).

And I do want to cite specifically the case of Carroll, C-a-r-r-o-1-1, versus Nakatani, 342 Federal 3d 934 at 945, a 2003 9th Circuit case. And I quote, "While Rule 59 permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy to be used sparingly in the interests of finality and conservation of judicial resources."

"12 James William Moore, et al., Moore's Federal Practice Section 59.30(4)(3d edition 2000). Indeed, a motion for reconsideration should not be granted absent highly unusual circumstances unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised in the earlier litigation."

Plaintiff argues that the Tamai affidavit was not a sham affidavit, and the record is in conflict on the issue of whether or not Dr. Main actually performed a cervical adjustment.

Plaintiff further argues that sufficient foundation was laid for Tamai's opinions and, alternatively, that Section 6-1012 and 6-1013 do not apply to chiropractors. So hence, the defendant has raised a new argument on reconsideration.

The defendant asserts in their briefing that the motion should have been brought under 59(e) instead of 11(a)(2)(B). But both rules-- under both rules, the Court must exercise discretion in deciding the motion.

The defendant further points out, as noted, that the plaintiff is impermissibly rearguing issues that have already been rejected by the courts.

**Defendant further emphasizes that the affidavit was untimely and, again, there was no explanation. Clearly, the affidavit was filed untimely and clearly the affidavit contradicted prior deposition testimony.**

**I conclude that the plaintiff has failed to demonstrate that the motion in this case should be granted, and I stand on the prior conclusions, page 36 through 40 of the transcript of the prior hearing**. Having closely reviewed that, I cannot conclude that there was error or that reconsideration should be granted here today.

So I'll ask that Mr. Messerly provide an additional order denying the motion for reconsideration.

18

(Emphasis added).

The first highlighted statement of the district court reiterates the bases for the district court's order granting Dr. Gallegos-Main's motion to strike Dr. Tamai's affidavit, i.e., that the affidavit was untimely and it contradicted her earlier deposition testimony. There is no suggestion that the district court concluded that the affidavit lacked adequate foundation as to Dr. Tamai's familiarity with the applicable standard of health care practice; to the contrary, the district court acknowledged that, as of the time of the preparation of the affidavit, "she became aware, at least in communications with a chiropractor here, of the local standard of care in this community." Rather, as the second highlighted portion of the district court's comments reflects, the district court simply continued to adhere to the earlier determination that the affidavit was untimely and a sham. It appears to me that the district court never addressed the parties' arguments regarding the foundation for Dr. Tamai's affidavit.

Despite the foregoing disagreements with the majority, I nevertheless concur in the result. Arregui's motion for reconsideration only addressed the district court's decision to strike Dr. Tamai's affidavit as a sham. There was no mention of the untimeliness of the filing of the affidavit. Likewise, in this appeal, Arregui has not addressed the issue of the timeliness of the affidavit or this alternative ground advanced by the district court for denying the motion for reconsideration. Although I would be inclined to find that the district court erred in determining that the affidavit was a sham, this Court has consistently held that an appellant's failure to address an independent ground for a grant of summary judgment is fatal to the appeal. *See e.g.*, *Andersen v. Prof'l Escrow Serv., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005). Thus, I reluctantly concur.

Chief Justice BURDICK and Justice EISMANN CONCUR.

19