## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 32539

| | |
|---|---|
| TAMMIE MCDANIEL and MICHAEL MCDANIEL, husband and wife, ) ) ) Plaintiffs-Appellants, ) ) v. ) ) INLAND NORTHWEST RENAL CARE GROUP-IDAHO, LLC., a foreign limited liability company, and RENAL CARE GROUP, INC., a foreign corporation, ) ) ) ) ) ) Defendants-Respondents, ) ) and ) ) SACRED HEART MEDICAL CENTER, a foreign corporation; BAXTER HEALTHCARE CORPORATION, a foreign corporation; ALTHIN MEDICAL AB, a foreign corporation or business entity; FRESENIUS MEDICAL CARE NORTH AMERICAN, a foreign corporation or business entity; CURTIS G. WICKRE, a physician licensed to practice in Idaho; and DOES 1 through 10 (whose true names are unknown), Idaho and/or foreign individuals, corporations and/or business entities, ) ) ) ) ) ) ) ) ) ) ) ) ) ) Defendants. ) | Coeur d'Alene, April 2007 Term<br><br>2007 Opinion No. 65<br><br>Filed: April 27, 2007<br><br>Stephen W. Kenyon, Clerk |

---

Appeal from the District Court of the First Judicial District of the State of Idaho, for the County of Kootenai. Hon. John P. Luster, District Judge.

Order granting summary judgment is affirmed.

Kerwin C. Bennett, Coeur d'Alene, Idaho, and Michael J. Riccelli, Spokane, Washington, for appellants. Both argued.

1

Randall & Danskin, P.S., Spokane, Washington, for respondents. Keith D. Brown argued.

---

JONES, Justice

The appellants, Tammie and Michael McDaniel, sued Inland Northwest Renal Care Group-Idaho, LLC, and Renal Care Group, Inc. (collectively "the defendants") for medical malpractice after Tammie suffered physical injuries, allegedly as the result of a dialysis treatment. The district court granted the defendants' motion for summary judgment, finding that the testimony of the McDaniels' out-of-state expert witness was inadmissible for lack of a proper foundation establishing his knowledge of the applicable standard of care. We affirm.

**I.**

Tammie suffers from end-stage renal disease ("ESRD"), which is the complete or near complete failure of the kidneys' ability to filter blood of metabolic waste. As a result, Tammie is required to routinely undergo hemodialysis treatments. On January 20, 2001, Tammie presented at the North Idaho Dialysis Facility in Coeur d'Alene for her regular three-hour dialysis session and a patient care technician connected her to a Tina 1000 dialysis machine.[1] Approximately two hours into the dialysis session an alarm sounded on the machine, indicating that it was no longer drawing a sufficient amount of bicarbonate, a solute necessary for a successful hemodialysis session. Each Tina 1000 is equipped with a two and one-half gallon jug of bicarbonate that sits beneath the machine.

A Tina 1000 that fails to draw sufficient bicarbonate is programmed to automatically switch from "dialysis mode" to "bypass mode," resulting in a temporary pause in the dialysis session. Normally, the patient care technician simply replaces the low jug with a new jug of bicarbonate and the machine automatically resumes treatment. Here, however, the machine would not return to dialysis mode after the patient care technician switched the jugs. The technician attempted to restart and reset the machine to no avail. Because Tammie needed another hour of dialysis, the technician transferred her

---

[1] The North Idaho Dialysis Facility was owned 80% by Inland Northwest Renal Care Group, LLC and 20% by Sacred Heart Medical Center of Spokane, Washington, at the time of the alleged negligence. Renal Care Group, Inc., was a member of the LLC.

to a second dialysis machine for the completion of her treatment. Tammie began experiencing hypertension after treating for approximately twenty minutes on the second machine. When her condition did not improve, she was transferred to the emergency department at Kootenai Medical Center in Coeur d'Alene for evaluation. Later that day, Tammie was taken to Sacred Heart Medical Center in Spokane where her treating nephrologist, Dr. Leo Obermiller, diagnosed her with acute pancreatitis and hemolysis.

The McDaniels subsequently filed this action, retaining Dr. Jay Wish, a nephrologist from Cleveland, Ohio, as their medical expert. The defendants moved for summary judgment on several grounds, one of which was that the affidavits of the McDaniels' expert witness failed to establish that he had actual knowledge of the applicable standard of care. The district court granted the defendants' motion, finding that the testimony of the McDaniels' out-of-state medical expert was inadmissible because they failed to lay a proper foundation establishing he had actual knowledge of the local standard of care in Coeur d'Alene at the time of the alleged negligence. The McDaniels appeal that decision.

## II.

The question presented is whether the district court erred in holding that the plaintiffs failed to establish that their expert witness had actual knowledge of the applicable standard of care. Because we affirm the district court's grant of summary judgment on this ground, we need not address the other issues raised by the parties on appeal.

## A.

When analyzing whether testimony offered in connection with a motion for summary judgment is admissible, this Court applies an abuse of discretion standard. *Dulaney v. St. Alphonsus Regional Medical Center*, 137 Idaho 160, 163–64, 45 P.3d 816, 819–20 (2002). An abuse of discretion review requires a three-part inquiry: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Schwan's Sales Enterprises, Inc. v. Idaho Transp. Dept.*, 142 Idaho 826, 831, 136 P.3d 297, 302 (2006). A district court's evidentiary rulings will not be

disturbed by this Court unless there has been a clear abuse of discretion. *Shane v. Blair*, 139 Idaho 126, 128, 75 P.3d 180, 182 (2003).

**B.**

The district court did not abuse its discretion when it found that the testimony of the McDaniels' expert witness was inadmissible. To survive summary judgment in a medical malpractice case "the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820; I.C. § 6-1012. Idaho Code § 6-1013 requires that a medical malpractice plaintiff lay a foundation establishing that his or her expert witness possesses "actual knowledge of the applicable . . . community standard to which his or her expert opinion testimony is addressed." The applicable community standard of care is "(a) the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any; (b) as such standard existed at the time of the defendant's alleged negligence; and (c) as such standard existed at the place of the defendant's alleged negligence." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820; I.C. § 6-1012. Furthermore, expert testimony offered via affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify as to the matters contained in the affidavit. I.R.C.P. 56(e).

In this case, the McDaniels offered the medical testimony of Dr. Wish, who testified via affidavit that the defendants breached the applicable standard of care by negligently failing to ensure that an adequate supply of bicarbonate was available for Tammie's dialysis session. In his affidavit, Dr. Wish testified to the following regarding his knowledge of the applicable standard of care:

> To the extent there is a medical standard of care associated with hemodialysis services, it is a national standard of care, as kidney dialysis is substantially regulated through the pervasive treatment of persons on SSI or Social Security Disability and/or who received Medicare or Medicaid benefits.
> . . .
> [T]o the extent there is any standard of care issue with respect to the delivery of professional medical services, the standard of care with respect to hemodialysis is a national standard of care and is not a community

4

based standard of care, or conversely, any community based standard of care is that of a uniform, national standard of care. Thus, I am familiar with the standard of care of hemodialysis in Coeur d'Alene, Idaho.

The essence of Dr. Wish's testimony is that the applicable standard of care for ESRD dialysis providers does not vary from community to community, but rather is uniform nationwide due to federal regulations that govern ESRD dialysis.

ESRD dialysis is governed in part by federal regulation. In 1972, Congress amended the Social Security Act to create the Medical End Stage Renal Disease Program, extending Medicare coverage to persons of all ages suffering from ERSD. The legislation authorized the Department of Health and Human Services ("HHS") to prescribe health and safety requirements that a facility providing dialysis and/or kidney transplantation services to ESRD patients must meet to qualify for Medicare reimbursement. 42 U.S.C. § 1395rr(b)(2)(B). These conditions are implemented in regulations found in 42 C.F.R. § 405 Subpart U, and "prescribe the role which End-Stage Renal Disease (ESRD) networks have in the ESRD program . . . and describe the health and safety requirements that facilities furnishing ESRD care to beneficiaries must meet." 42 C.F.R. § 405.2100.

The McDaniels argue that the regulations found in 42 C.F.R. § 405 Subpart U create a minimum national standard of care with respect to services provided by ESRD dialysis facilities. They further argue the district court's finding, that Dr. Wish's testimony regarding the national standard of care was inadmissible, is inconsistent with this Court's holding in *Hayward v. Jack's Pharmacy Inc.*, 141 Idaho 622, 115 P.3d 713 (2005). In *Hayward*, this Court found that an out-of-state medical expert could testify as to the standard of care applicable to the prescription of pharmaceuticals in nursing homes because certain relevant federal regulations created a national standard of care governing pharmaceutical use in nursing homes. *Id*. at 628, 115 P.3d at 719. However, unlike the plaintiffs in *Hayward,* who were able to cite to a specific federal regulation that dealt with the administration of pharmaceuticals in the nursing home setting, the McDaniels

have failed to cite to any federal regulation that even generally deals with the actual physical administration of ESRD dialysis services.[2]

There is a marked difference between regulations that govern the physical administration of health care services to patients and those that govern other aspects of a health care provider's practice, such as organizational, personnel, and utilization requirements. *Hayward* does not stand for the proposition that a national standard of care is automatically implicated simply because the federal government has created some general regulatory scheme for a given area of medicine. Where the promulgated regulations do not concern the administration of health care services, the principles delineated by this Court in *Hayward* are inapplicable. In such circumstances, Idaho Code § 6-1012 dictates that the applicable standard of health care is that practiced in "the community in which such care allegedly was or should have been provided."

In this case, then, the McDaniels must show that Dr. Wish is familiar with the standard of care for the particular health care provider as it existed in Coeur d'Alene at the time of the alleged negligence, and state how he became familiar with that standard. *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. Dr. Wish is from Cleveland and has not practiced medicine in Coeur d'Alene. He testifies that there is but one national standard of care for ESRD dialysis providers and, since he is familiar with the national standard of care, he is also familiar with the local standard of care. Conclusory statements that an expert is familiar with the local standard because he is familiar with the national standard are insufficient to meet the requirements of Idaho Code § 6-1013. *Strode v. Lenzi*, 116 Idaho 214, 216, 775 P.2d 106, 108 (1989). At a minimum, an out-of-state expert making such a claim is required to "inquire of a local specialist to determine whether the local community standard varies from the national standard." *Id*.

The parties do not dispute that Dr. Wish has not contacted a local physician to inquire as to the standard of care in Coeur d'Alene. Rather, the McDaniels contend that any such attempt would prove futile, since there is allegedly only one provider of ERSD dialysis services in Coeur d'Alene. Although Idaho Code § 6-1012 allows a plaintiff to

---

[2] 42 C.F.R. § 405.2112(c) does state that one of the responsibilities of the administrative governing body for each ESRD network is to "[d]evelop criteria and standards relating to the quality and appropriateness of patient care." However, no evidence exists in this case indicating that ESRD Network 16, of which Idaho is a member, has developed any criteria or standards that have been violated by the defendants.

inquire as to the standard of care for a like provider in a similar Idaho community under such circumstances, the McDaniels argue that they assumed other providers would be unwilling to discuss the standard of care, since they are allegedly owned by the same parent company and are a part of the same ESRD network.[3]

This Court has held that when the Legislature enacted Idaho Code §§ 6-1012 and 6-1013 in 1976, it was in part "concerned with the disparity between urban and rural areas in terms of availability of medical facilities, education programs, and other specialists." *Buck v. St. Clair*, 108 Idaho 743, 746, 702 P.2d 781, 784 (1985). Understandably, the practice of medicine in Idaho has historically involved a good number of doctors practicing in small communities with limited resources, limited access to the flow of medical information, and limited support from like providers. Such doctors, if held to the same standard of practice as those in urban communities, would face inequities stemming from the geographical location of their practice.

Recent years have witnessed increasing standardization in the health care profession, due to a variety of factors. Governmental regulation, both at the state and federal level, has resulted in the establishment of minimum standards for dispensation of care in specific areas, such as certain care standards applicable in the nursing home setting under HHS regulations, *Hayward*, and the adoption of certain national dental care standards in the State Dental Practice Act, *Grover v. Smith*, 137 Idaho 247, 250, 46 P.3d 1105, 1108 (2002). The North Idaho Dialysis Facility is part of ESRD Network 16, which, pursuant to 42 C.F.R. § 405.2112(c), is required to develop standards relating to the quality and appropriateness of patient care. Such standards, if they have been developed and implemented, may or may not apply under the facts of this case but, since they have not been provided, it is not possible to know.

Standardization has also resulted from the development of regional and national provider organizations. The North Idaho Dialysis Facility was apparently 80% owned by Inland Northwest Renal Care Group, LLC, a Washington limited liability company that operated several dialysis facilities in Eastern Washington and North Idaho. At oral argument, Plaintiffs' counsel asserted that this organization was affiliated with a national

---

[3] The Legislature has provided that where there is "no other like provider in the community and the standard of practice is therefore indeterminable, evidence of such standard in similar Idaho communities at

renal care provider and it appears that the facility was 20% owned by Sacred Heart Medical Center in Spokane, Washington. It may be that Inland Northwest Renal Care Group, LLC, or perhaps Sacred Heart Medical Center, had internal rules or standards that applied to the care administered to Tammie. Or, perhaps, the national renal care provider had standards that applied to the facility. It is hard to conceive that in the current medical/legal environment, such a facility would not have internal rules or standards relating to the administration of such care. Being the only facility in North Idaho, any such rules or standards would likely set the local standard of care for this facility. However, we will never know because there appears to have been no effort to obtain any such standards or practices or even to determine whether they might exist. The point is that in the present medical care environment, there are a variety of ways that a medical malpractice plaintiff may be able to establish a local standard of care as being synonymous with a regional or national standard. However, the district court was not presented with any proof in this regard, other than a conclusory assertion by plaintiff's medical expert that he knew what the standard of care was because it was a national standard of care. This does not fulfill the requirements of Idaho Code §§ 6-1012 and 6-1013. *Strode*, 116 Idaho at 216, 775 P.2d at 108.

This case does not involve an expert who could not familiarize himself with the applicable standard of care pursuant to the requirements of Idaho Code §§ 6-1012 and 6-1013 but, rather, involves an expert who merely failed to attempt to do so. Dr. Wish's affidavit does not state that he attempted to contact an ESRD dialysis provider in Idaho, and nothing in the record substantiates the claim that it would have been impossible for him to obtain evidence as to the local standard of care by simply doing so. Therefore, the district court did not abuse its discretion in finding that Dr. Wish's testimony was inadmissible because he failed to adequately familiarize himself with the local standard of care pursuant to Idaho Code § 6-1013.

## C.

Both parties request attorney fees on appeal pursuant to Idaho Code § 12-121. "An award of attorney fees under Idaho Code § 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the

said time may be considered." I.C. § 6-1012.

abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *McGrew v. McGrew*, 139 Idaho 551, 562, 82 P.3d 833, 844 (2003). The McDaniels have not prevailed and therefore are not entitled to an award. The defendants are not entitled to an award because the McDaniels did not act frivolously or unreasonably in this matter. The McDaniels made a good faith argument that a national standard exists regarding ESRD dialysis per the federal regulations and this Court's decision in *Hayward*.

## III.

The district court did not abuse its decision by holding that the testimony of the McDaniels' expert witness was inadmissible and granting summary judgment to the defendants. The district court is affirmed. The defendants are entitled to costs.

Chief Justice SCHRODER, and Justices TROUT, EISMANN and BURDICK CONCUR.