IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42540

| | | |
|---|---|---|
| LUCIA NAVO, an individual, SERENA NAVO and NICHOLE NAVO, individuals by and through Val Navo as guardian, | ) ) ) ) | |
| Plaintiffs-Appellants-Cross Respondents, | ) ) ) | Boise, January 2016 Term |
| v. | ) ) | 2016 Opinion No. 47 |
| | ) | Filed: April 26, 2016 |
| BINGHAM MEMORIAL HOSPITAL, an Idaho corporation, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Respondent-Cross Appellant, | ) ) ) | |
| and | ) ) | |
| RYAN SAYRE, an individual, and MATTHEW MONROE, an individual, | ) ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Hon. David C. Nye, District Judge.

The district court's grant of summary judgment and award of costs and attorney fees are vacated and the case remanded for further proceedings.

Petersen Moss Hall & Olsen, Idaho Falls, attorneys for appellants. Nathan Olsen argued.

Powers Tolman Farley, PLLC, Twin Falls, attorneys for respondent. Jennifer K. Brizee argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Lucia Navo, Serena Navo, and Nicole Navo (collectively "Appellants") appeal from the dismissal on summary judgment of a case arising out of the death of Ellery Navo ("Navo")

1

during a surgery at Bingham Memorial Hospital ("Respondent" or "BMH"). At trial, Appellants argued that BMH was liable both for its own negligence and for the negligent actions of certified nurse anesthetist Ryan Sayre ("Sayre"), an independent contractor who administered anesthesia services at BMH. Appellants supported their claim that BMH itself had been negligent with expert testimony from Dr. Samuel H. Steinberg ("Dr. Steinberg"). The district court held, *inter alia*, that: (1) Dr. Steinberg's testimony was inadmissible because Appellants had failed to provide evidence that he was familiar with the relevant local standard of care; (2) Appellants had failed to provide any evidence that BMH employees had acted negligently; (3) Appellants had failed to plead that Sayre was an agent of BMH under a theory of apparent authority; (4) even if Appellants had properly pleaded a theory of apparent authority, they failed to provide evidence sufficient to create an issue of material fact; and (5) BMH was not entitled to discretionary costs, including attorney fees.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

On or about November 20, 2008, Navo suffered a broken ankle when he slipped exiting his truck. On November 21, 2008, surgery was performed on Navo's ankle, which included the installation of a metal rod. Subsequently, Navo's ankle became infected, and he was admitted to BMH. Surgery to remove the metal rod was scheduled at BMH for December 20, 2008.

On December 15, 2008, Navo signed a form entitled "Conditions of Admission to Bingham Memorial Hospital" (the "Admission Form"). Part six of the Admission Form, entitled "Legal Relationship Between Hospital and Physician," reads as follows:

> I understand that, unless I am specifically otherwise informed in writing, *all physicians furnishing services to me, including . . . anesthesiology providers . . . and the like are independent contractors and are not employees or agents of the hospital.* I am under the care and supervision of my attending physician and it is the responsibility of the hospital and its staff including residents and/or students to carry out the instructions of my physician. It is my physician's responsibility to obtain my informed consent, when required, for medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services rendered unto me under general or special instruction of my physician. I understand that there will be a separate charge for professional services, such as physician services. I

---

[1] As an aside, Appellants previously named Sayre as an additional defendant. Related to Appellants' claim against Sayre, Appellants presented expert witness testimony of Dr. Schulman, which was initially found to be inadmissible by the district court. However, upon reconsideration, the district court held that Dr. Schulman's testimony regarding the standard of care of certified nurse anesthetists and the breach of that standard by Sayre was allowed under Idaho Code sections 6-1012 and 6-1013. Later, as result of settlement, the parties stipulated to the dismissal, with prejudice, of claims against Sayre. Therefore, the issues on appeal are related only to claims between Appellants and BMH.

understand that the hospital does bill for some professional fees; but some professional fees are not included in the hospital's bill and will be billed separately by the physician/provider.

(Emphasis added).

On December 17, 2008, Navo was given an Anesthesia and Procedure Consent Form, which he signed. The Anesthesia and Procedure Consent Form did not expressly indicate whether anesthesia services were being provided by BMH or by an independent contractor. It stated that "I understand that there will be a fee for this anesthetic or procedure and that it will be in addition to the hospital or other physician's fee . . . " The Anesthesia and Procedure Consent Form was printed on BMH letterhead, which contained the BMH logo and contact information.

On December 20, 2008, Navo underwent surgery at BMH. Anesthesia was administered by Sayre, who is a Certified Registered Nurse Anesthetist ("CRNA") and an employee of Blackfoot Anesthesia Services. During the surgery, Sayre administered anesthesia by way of a "spinal." Shortly after the anesthesia was administered, Navo's blood pressure, heart rate, and oxygen levels dropped. Sayre converted the spinal anesthesia to a general anesthesia and Navo was stabilized enough that surgery could continue. However, when the surgery was completed, nurses were unable to revive Navo. Navo remained non-responsive until his death on December 30, 2008.

On December 29, 2010, Appellants filed a complaint (the "Complaint") against BMH, Monroe[2], and Sayre, alleging that: (1) Sayre and BMH and each of their "agents" had failed to exercise medical judgment in line with the local standard of care during the surgery, which was the proximate cause of Navo's death; and (2) BMH failed to exercise reasonable care in the hiring, training, and supervision of its "employees," which was the proximate cause of Navo's death.

At no point does the Complaint expressly set forth a theory of agency by which BMH would be liable for Sayre's negligence. The Complaint does, however, specifically include the term "and their agents" in alleging BMH's liability for negligence during the operation. It does not specify who BMH's agents are.

BMH did not file an answer to the Complaint. Instead, BMH moved for summary judgment on the basis that Appellants could not establish a breach of the local standard of care

---

[2] Matthew Monroe ("Monroe") was another nurse anesthetist who had worked on Navo during the surgery. After the Complaint was filed it became evident that Monroe had not yet provided any services to Navo at the time the harm occurred. Accordingly, Monroe was dismissed as a defendant.

3

by any BMH employee. In its Motion for Summary Judgment, BMH argued that: (1) "[Appellants] must prove a breach of the applicable standard of health care practice in order to prove negligence in a medical malpractice case. See Idaho Code Section 6-1012"; (2) Appellants had not provided any evidence that BMH employees had acted outside of the standard of care; and (3) Sayre and other CRNAs were not, and never had been, employees of BMH.

On January 18, 2012, Appellants filed an opposition to BMH's Motion for Summary Judgment. Appellants argued that: (1) the testimony of Dr. Steinberg created an issue of material fact as to whether BMH's failure to institute policies and procedures for the administration of anesthesia by independent contractors had violated the local standard of care; and (2) BMH was liable for negligence committed by Sayre under a theory of apparent authority.

In his affidavit and report, Dr. Steinberg testified that BMH had violated standards promulgated by the Joint Commission on Accreditation of Hospitals, an independent non-profit organization that accredits and certifies nearly 21,000 health care organizations across the United States. Specifically, Dr. Steinberg alleged that BMH had violated the following language:

> LD.1.10—"The hospital identifies how it is governed. The hospital has governance with ultimate responsibility and legal authority for the safety and quality of care, treatment, and services."

> LD.1.30—"The hospital complies with applicable law and regulation."

> LD.2.20—"Each hospital program, service, site or departments has effective leadership."

> LD.3.50—"Care, treatment, and services provided through contractual agreement are provided safely and effectively."

Dr. Steinberg's affidavit also indicated that he had familiarized himself with Idaho Code section 54-1402, Idaho Administrative Code section 16.13.14 [sic][3], and Idaho Administrative Code section 23.01.01.

In his report, Dr. Steinberg attested to his knowledge of the local standard of care as follows:

> Joint Commission standards are widely accepted in the United States as the standard of care for the provision of inpatient hospital care, and describe the accountability and responsibility of hospital leaders in the delivery of care at their facilities. Joint Commission standards require that hospital leaders establish a

---

[3] Idaho Administrative Procedures Act section 16.13.14 does not exist. It is evident that Dr. Steinberg intended to state that he had reviewed Idaho Administrative Procedures Act section 16.03.14.

4

governance structure and management systems to oversee that appropriate rules, regulations, infrastructure, credentialing, and communication processes are in place to deliver high quality and safe care to their patients. The hospital is further required to establish systems to monitor the effectiveness of care and to correct any deficiencies. Ultimately, the hospital is responsible for the oversight of all professional services provided by medical staff, employees, and any others that it credentials or contracts with to practice at the hospital. Joint Commission standards are also frequently used by the federal Centers for Medicare and Medicaid to determine compliance with the requirements of these programs, and are also used and accepted as the standard of care for hospital licensure in many states, including Idaho, and Bingham Memorial Hospital is accredited by the Joint Commission and must therefore comply with their standards. I have also spoken with Judith Nagel, RN, Associate Director of the Idaho State Board of Nursing on January 11, 2011 to affirm that the community standards in rural hospitals in Idaho regarding nurse anesthesia programs is similar to standards in place across the country that I am familiar with.

Shortly thereafter, BMH moved to strike the report and affidavit of Dr. Steinberg on the ground that Dr. Steinberg was not competent to testify under Idaho Rule of Evidence 702. BMH argued that Dr. Steinberg had not provided a foundation of "actual knowledge" of the local community standard of care in Blackfoot, Idaho, in December of 2008, on which to base his testimony—as is required under Idaho Code sections 6-1012 and 6-1013. More specifically, Dr. Steinberg was required to, at a minimum, inquire of local specialists to determine whether the community standard of care in Blackfoot, Idaho, differed from the national standard with which he was familiar. Dr. Steinberg's statement that he had spoken to Judith Nagel to familiarize himself with the community standards was insufficient, BMH argued, because Judith Nagel herself was not familiar with the community standard of care in Blackfoot.[4]

On February 27, 2012, the district court granted BMH's motion to strike Dr. Steinberg's testimony. The district court reasoned first that:

> Dr. Steinberg's affidavit is without adequate foundation. He does not establish that he has actual knowledge of what the standard of care is in Blackfoot as it existed in December 2008. Furthermore, his alleged consultation with Nagel is also insufficient. He does not indicate that Nagel has actual knowledge of what the standard of care is in Blackfoot or how she became familiar with it.

---

[4] In conjunction with its motion to strike, BMH submitted the affidavit of Judith Nagel; stating that:

> I do not recall making any statements to Dr. Steinberg about community standards for nurse anesthetists or for hospitals either in Idaho or other states. Furthermore, I do not have actual knowledge of the local community standard of health care practice that applied to BMH or nurse anesthetists in Blackfoot, Idaho, in December 2008.

On March 12, 2012, Appellants moved for the district court to reconsider its decision. Attached to that motion, Appellants provided an additional affidavit from Dr. Steinberg, in which he specified that he was familiar with the standard of care in the service area of BMH (the Eastern Idaho Region) as it existed in 2008. He explained that while he had been unable to find a hospital administrator in the Eastern Idaho Region who would speak to him, the Idaho Board of Nursing regulates the provision of anesthesia services for all of Idaho, and so Judith Nagel was the proper person to consult with regard to the local standard of care.

In their memorandum in support, Appellants argued that the local standard of care in Blackfoot had been replaced with a national standard of care with which Dr. Steinberg was familiar.

On July 24, 2012, the district court held that the supplemental affidavit of Dr. Steinberg was not sufficient to show that the court had made an error such that reconsideration would be proper—"[t]his court is not convinced that simply showing governmental regulations are in place is an independent means whereby a plaintiff can show that a national standard of care has replaced a local standard of care," especially where the regulations in question govern the "organization, personnel, and utilization of the health care provider" rather than the actual administration of care.

Because Dr. Steinberg's testimony was not admissible, Appellants lacked the necessary support for their claim that BMH had violated the local standard of care by failing to institute policies and procedures for the administration of anesthesia by independent contractors. Accordingly, the claim was dismissed on summary judgment.

In support of its argument that Sayre was BMH's agent under a theory of apparent authority, Appellants cited the following facts: (1) the BMH website indicates that Steve McClellan, the owner of Blackfoot Anesthesia Services, is the "Manager" of the "Anesthesia Department," when in actuality BMH has no Anesthesia Department and Steve McClellan manages the CRNAs at Blackfoot Anesthesia Services who work with BMH as independent contractors; (2) forms used by the CRNAs were on BMH letterhead; and (3) BMH runs frequent advertisements on radio, television, and in print advertising health care services, which do not expressly state that certain services at BMH are provided by independent contractors.

BMH responded that: (1) Appellants had failed to plead that BMH was liable for Sayre's negligence under an agency by apparent authority "cause of action," and therefore were

precluded from pursuing that "cause of action"; and (2) Appellants cannot show that Navo reasonably believed that Sayre was an agent of the hospital because he had signed the Admission Form which explicitly stated that he was aware that anesthesia providers were not agents of BMH.

On May 31, 2013, the district court entered an order determining that Appellants had failed to adequately plead apparent authority in the Complaint. The court reasoned that "the key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it." The inclusion of the phrase "and their agents" in the Complaint was not enough to put BMH on notice that Appellants would be arguing that Sayre was BMH's agent under a theory of apparent authority. The court concluded that "even a hyper-vigilant attorney would be unable to decipher this as a possible apparent authority cause of action."

The district court further held that BMH had not held Sayre out as its agent. It cited the Admission Form as evidence that BMH took appropriate steps to alert the public that anesthesia providers were independent contractors and not employees or agents. Conversely, the district court held that the Anesthesia and Procedure Consent Form submitted by Appellants was not enough to create an issue of material fact. To hold that the BMH logo on that form was enough to create apparent authority would "require more than a liberal inference in [Appellants'] favor[;] it would require an extreme supposition." Indeed, the court noted that the Anesthesia and Consent Form actually cut the opposite direction because it contained notice that anesthesia services were billed apart from BMH's hospital bills.

Finally, the district court held that there had not been any showing that Navo had actually believed that Sayre was an agent of BMH. It noted that Appellants "have failed to present even a mere scintilla of evidence on Ellery Navo's belief that Sayre was rendering services on behalf of BMH."

On June 14, 2013, BMH filed a motion for attorney fees and costs. On June 28, 2013, Appellants submitted an objection to BMH's motion for attorney fees and costs and served that motion on its adverse parties. However, that objection was not filed with the court until July 1, 2013. On August 21, 2013, the district court denied BMH's motion for costs and attorney fees without prejudice because not all of the parties' claims had been resolved and, accordingly, it did not have jurisdiction to grant attorney fees. On August 15, 2014, BMH renewed its motion for costs and attorney fees. Appellants filed their objection that same day. The district court

7

reviewed BMH's motion on the merits and declined to grant discretionary costs and attorney fees.

On September 15, 2014, Appellants filed an appeal of the Judgment. On November 10, 2014, BMH filed a cross-appeal of the district court's Judgment on Costs and Fees.

### III. ISSUES ON APPEAL

1.      Did the district court abuse its discretion by striking Dr. Steinberg's testimony?

2.      Did the district court err in holding that Appellants were barred from arguing apparent authority in response to BMH's motion for summary judgment?

3.      Did the district court err in granting summary judgment to BMH on the finding that no issue of material fact existed as to whether Sayre was BMH's agent under a theory of apparent authority?

4.      Did the district court abuse its discretion in denying BMH's motion for costs and attorney fees?

5.      Is either party entitled to attorney fees and costs on appeal?

### IV. STANDARD OF REVIEW

1.      *Evidentiary rulings are reviewed for abuse of discretion.*

"A district court's evidentiary rulings will not be disturbed by this Court unless there has been a clear abuse of discretion." *Mattox v. Life Care Centers of America, Inc.*, 157 Idaho 468, 473, 337 P.3d 627, 632 (2014) (citing *McDaniel v. Inland Nw. Renal Care Grp.-Idaho, LLC*, 144 Idaho 219, 222, 159 P.3d 856, 859 (2007)).

In applying the abuse-of-discretion standard, this Court asks three questions: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistent with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Id.*

2.      *Determinations on summary judgment are reviewed under the same standard of review used by the district court.*

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 192 P.3d 1000, 1003 (2012). Summary judgment is proper when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

When considering whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* However, "[A] mere scintilla of evidence or only slight doubt as to the facts is insufficient to withstand summary judgment; there must be sufficient evidence upon which a jury could reasonably return a verdict resisting the motion." *Harpole v. State,* 131 Idaho 437, 439, 958 P.2d 594, 596 (1998). "[A] moving party is entitled to summary judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 530–31, 887 P.2d 1034, 1037–38 (1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

3.    *Denials of discretionary costs and attorney fees are reviewed for abuse of discretion.*

Awards and denials of costs and attorney fees by the district court are reviewed for an abuse of discretion. *Hoagland v. Ada County*, 154 Idaho 900, 907, 303 P.3d 587, 594 (2013).

# V. ANALYSIS

**A.    The district court did not abuse its discretion by refusing to admit Dr. Steinberg's expert testimony.**

Idaho Code section 6-1012 establishes that a plaintiff in a medical malpractice action must provide expert testimony showing that the defendant health care provider negligently failed to meet the applicable standard of health care practice in the community as such standard existed at the time and place of the alleged negligence:

> In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care, including . . . nurse anesthetist[s] . . . or any person vicariously liable for the negligence . . . such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence . . . .

I.C. § 6-1012.

Idaho Code section 6-1013 establishes that a plaintiff's proposed expert must have *actual knowledge* of the local standard of healthcare practice as such standard existed at the time and place of the alleged negligence. I.C. § 6-1013.

> The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of

9

one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with *actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed*; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

I.C. § 6-1013 (emphasis added).

An out-of-area expert witness may provide expert testimony only after adequately familiarizing himself or herself with the applicable community standard of care. *Id.* There is abundant Idaho Supreme Court precedent as to how an out-of-area expert may familiarize himself or herself with the local community standard of care. Recently, this Court opined that:

> The guiding question is simply whether the affidavit alleges facts which, taken as true, show the proposed expert has actual knowledge of the applicable standard of care. In addressing that question, courts must look to the standard of care at issue, the proposed expert's grounds for claiming knowledge of that standard, and determine—employing a measure of common sense—whether those grounds would likely give rise to knowledge of that standard. The obligation to demonstrate actual knowledge of the local standard of care is not intended to be "an overly burdensome requirement...." *Frank v. E. Shoshone Hosp.*, 114 Idaho 480, 482, 757 P.2d 1199, 1201 (1988). Nor is the standard static and firmly rooted in past medical practices. Standards of care are sensitive to evolving changes in the way health care services are delivered in the various communities of our State. Indeed, the Court has recognized that "governmental regulation, development of regional and national provider organizations, and greater access to the flow of medical information," have provided "various avenues by which a plaintiff may proceed to establish a standard of care...."*Suhadolnik v. Pressman*, 151 Idaho 110, 121, 254 P.3d 11, 22 (2011).

*Mattox v. Life Care Centers of America, Inc.*, 157 Idaho 468, 474, 337 P.3d 627, 633 (2014).

"One method for an out-of-area expert to obtain knowledge of the local standard of care is by inquiring of a local specialist." *Mattox* at 476, 337 P.3d at 635 (quoting *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002)). "When this method is employed, the affidavit must provide adequate reason to believe that the local specialist interviewed has actual knowledge of the applicable standard of care." *Id.* at 476, 337 P.3d at 635. For example, in *Dulaney* this Court held that expert testimony from an out-of-area emergency room physician was properly excluded where he failed to provide any evidence that the local physician

10

specializing in internal medicine whom he had consulted actually had knowledge of the local standard of care regarding the discharge of patients from local emergency rooms. 137 Idaho at 166, 45 P.3d at 822. Likewise, in *Arregui v. Gallegos-Main*, a plurality of this Court concluded that in a medical malpractice case brought against a chiropractor, testimony from an out-of-area expert who allegedly consulted with a local chiropractor was properly excluded where that expert failed to identify the local chiropractor, did not describe his chiropractic practice, and did not explain how he became familiar with the local standards of care. 153 Idaho at 809, 291 P.3d at 1008. Alternatively, in *Mattox*, this Court held that an out-of-area nurse had satisfied the actual knowledge requirement where she had consulted both with a local doctor and an associate professor teaching in the practical nursing program at Lewis-Clark State College, to familiarize herself with the local standard of care for nursing in Lewiston, Idaho. 157 Idaho at 479, 337 P.3d at 638.

An additional method by which an out-of-area expert in a medical malpractice case may satisfy the actual knowledge requirement is by demonstrating familiarity with a statewide or national standard of care that has superseded the local standard of care. For example, in *Hayward v. Jack's Pharmacy Inc.*, this Court found that the local standard of care regarding treatment of patients in a nursing home had been replaced by state and federal standards of care. This Court opined that because

> nursing homes are required to follow federal and state guidelines relating to patient care, including the prescription of pharmaceuticals, and . . . are responsible when those standards are not met . . . . [I]t follows that the standard of care for a physician treating a patient in a nursing home would be governed by those [federal and state guidelines].

141 Idaho 622, 628, 115 P.3d 713, 719 (2005).

Likewise, in *Mattox* this Court found that an expert had satisfied the actual knowledge requirement in a malpractice action, where that expert proved her familiarity with:

> [(1) federal regulations that] govern the certification of long-term and skilled nursing facilities in the Medicare and Medicaid programs[,] . . . [and] require such facilities to develop a comprehensive care plan that includes measurable objectives and timetables to meet a residents [sic] medical, nursing, and mental and psychosocial needs, . . . [and provide that] [e]ach resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychological well-being, in accordance with the comprehensive assessment and plan of care . . . [including] adequate supervision and assistance devices to prevent accidents; [and (2) IDAPA rules requiring that a] patient/resident plan of care shall be developed in writing upon

11

admission of the patient/resident . . . which reflect[s] the patient's needs, [and that] nursing services shall be provided to assure that each patient/resident receives care necessary to meet his total needs . . . including patient protection.

157 Idaho at 478–79, 337 P.3d at 637–38.

It is crucial to note, however, that not all state or federal regulations are the type that can replace a local standard of care. "Only regulations that concern the 'physical administration of health services' can replace a local standard of care for purposes of Idaho Code sections 6-1012 and 6-1013." *Id.* at 478, P.3d at 637 (citing *McDaniel* at 223, 159 P.3d at 860). In *McDaniel* this Court held that familiarity with federal regulations prescribing health and safety requirements for facilities providing dialysis and/or kidney transplantation services of patients with end-stage renal disease could not suffice as familiarity with the local standard of care for an expert alleging that defendant negligently failed to ensure that an adequate supply of bicarbonate was available for a dialysis session. 144 Idaho at 222, 159 P.3d at 859. This Court explained that:

> There is a marked difference between regulations that govern the physical administration of health care services to patients and those that govern other aspects of a health care provider's practice, such as organizational, personnel, and utilization requirements. *Hayward* does not stand for the proposition that a national standard of care is automatically implicated simply because the federal government has created some general regulatory scheme for a given area of medicine. Where the promulgated regulations do not concern the administration of health care services, the principles delineated by this Court in *Hayward* are inapplicable.

*Id.* at 223, 159 P.3d at 860.

There are two ways that Dr. Steinberg could have shown actual knowledge such that he would be qualified to testify in accordance with Idaho Code section 6-1012: (1) he could have familiarized himself with the local standard of care by learning about that standard from another physician who was himself or herself familiar with the local standard of care; or (2) he could have shown that the local standard of care had been replaced by a national or statewide standard of care contained in a state or federal regulation.

First, we hold that the district court was correct in finding that in and of itself, Dr. Steinberg's conversation with Judith Nagel was not sufficient to give him actual knowledge of the local standard of care in Blackfoot in December of 2008. In order for Judith Nagel to have familiarized Dr. Steinberg with the standard of care, she would have had to herself be familiar with that standard of care. Appellants fail to produce any evidence that Judith Nagel was familiar with the local standard of care in Blackfoot in December of 2008.

Second, we hold that the local standard of care for anesthesia services in Blackfoot in December of 2008 had not been replaced by a national or statewide standard of care with which Dr. Steinberg was familiar (either the Joint Commission standards or any of the other statutes that Dr. Steinberg claimed to have reviewed).

In his affidavit, Dr. Steinberg opined that BMH violated the following Joint Commission Standards:

> LD.1.10—"The hospital identifies how it is governed. The hospital has governance with ultimate responsibility and legal authority for the safety and quality of care, treatment, and services."
>
> LD.1.30—"The hospital complies with applicable law and regulation."
>
> LD.2.20—"Each hospital program, service, site or departments has effective leadership."
>
> LD.3.50—"Care, treatment, and services provided through contractual agreement are provided safely and effectively."

On review, it is clear that these Joint Commission Standards do not provide a coherent standard of care that a hospital could look to for guidance in the administration of anesthesia services. For a federal or statewide regulation to replace a local standard of care, that regulation must provide actual concrete guidance with respect to the activities it purports to govern. Generalities requiring "compliance with the law," "effective leadership," and that services be provided "safely" and "effectively" are, as a practical matter, not sufficient to replace a local standard of care.

In addition to the Joint Commission Standards, Dr. Steinberg indicated that he had reviewed certain Idaho Code and Idaho Administrative Code provisions. These provisions contain the following relevant language:

> I.C.§ 54-1402—"Advanced Practice Registered Nurse means a registered nurse licensed in this state who has gained additional specialized knowledge, skills and experience through a program of study recognized or defined by the board. . . . [and] shall include . . . certified registered nurse anesthetist[s]."
>
> IDAPA 16.13.14 [sic][5]—"Policies and procedures shall be approved by the medical staff and the administration of the hospital. These written policies shall

---

[5] Despite being cited by both Dr. Steinberg and Appellants, it appears that IDAPA 16.13.14 does not exist. It is evident from Dr. Steinberg's affidavit that he actually reviewed IDAPA 16.03.14. In his affidavit Dr. Steinberg refers to this chapter of the IDAPA broadly; presumably he intended to reference subsection 390 regarding anesthesia services.

13

include as least . . . **a.** Designation of persons permitted to give anesthesia, types of anesthetics, preanesthesia, and post anesthesia responsibilities; and **b.** Preanesthesia physical evaluation of a patient by an anesthetist, with the recording of pertinent information prior to surgery together with the history and physical and preoperative diagnosis of a physician; and **c.** Review of patient condition immediately prior to induction; and **d.** Safety of the patient during anesthetic period; and **e.** Record of events during induction, maintenance, and emergence from anesthesia including: i. Amount and duration of agents; and ii. Drugs and IV fluids; and iii. Blood and blood products. **f.** Record of post-anesthetic visits and any complications shall be made within three (3) to forty-eight (48) hours following recovery; and **g.** There shall be a written infection control procedure including aseptic techniques, and disinfection or sterilizing methods."

IDAPA 23.01.01[6]

We hold that Idaho Code section 54-1402 does not provide a standard of care at all. The Idaho Code requires only that CRNAs pursue a program of recognized study, but it does not regulate the provision of services by CRNAs after they have completed such a program.

IDAPA 16.03.14, on the other hand, is not completely dissimilar to the standard of care in *Mattox*, which this court held had replaced the local standard of nursing home care. *Mattox*, 157 Idaho at 479, 337 P.3d at 632. However, there is one crucial difference between the two. In *Mattox*, the federal standards at issue required nursing care facilities to create individual plans of care for each patient and then required those facilities to follow each plan of care so as to provide for the individual patient's safety and well-being. *Id.* Accordingly, the standards in *Mattox* governed the actual administration of care, even if they left the creation of each plan of care to the hospital. *Id.* IDAPA 16.03.14, on the other hand, does not itself establish rules governing the actual administration of care, but instead requires that medical staff and hospital governance approve their own policies and procedures. While the policies and procedures approved by each individual hospital might themselves govern the actual administration of care, the IDAPA requirement that policies and procedures exist is organizational in nature. Therefore, in accordance with this Court's decision in *McDaniel*, IDAPA 16.03.14 cannot serve to replace a local standard of care because it does not govern the actual provision of care in Idaho hospitals.

In sum, the district court did not act outside of its discretion when it held that: (1) Dr. Steinberg's conversation with Judith Nagel was not sufficient to show that he had acquired actual

---

[6] Chapter 01 contains a number of subsections. Dr. Steinberg's affidavits and Appellants' briefs do not indicate which subsections, if any, are relevant to the local standard of care, and it is not evident from an independent review.

knowledge of the local standard of care; and (2) the statewide and national standards cited by Dr. Steinberg had not replaced the local standard of care for the purposes of Idaho Code section 6-1012.

**B.      The district court erred in holding that Appellants were barred from arguing apparent authority in response to BMH's motion for summary judgment.**

The district court held that BMH cannot be held liable for Sayre's conduct because Appellants failed to properly plead the theory of apparent authority.

"A cause of action not raised in a party's pleadings may not be considered on summary judgment nor may it be considered for the first time on appeal." *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 613, 114 P.3d 974, 983 (2005).

Idaho Rule of Civil Procedure 8(a) provides:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) if the court be of limited jurisdiction, a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled.

IRCP 8(a). However, "[t]he technical rules of pleading have long been abandoned in Idaho, and the 'general policy behind the current rules of civil procedure is to provide every litigant with his or her day in court.'" *Brown v. Pocatello*, 148 Idaho 802, 807, 220 P.3d 1164, 1169 (2010) (quoting *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986)). This approach has likewise been adopted with regard to affirmative defenses; "[t]his Court has interpreted IRCP 8(c) as requiring affirmative defenses to be plead, but without identifying the consequences for failing to do so." *Patterson v. Idaho Dep't of Health & Welfare*, 151 Idaho 310, 316, 256 P.3d 718, 724 (2011). This Court continued, "[t]herefore . . . a party does not waive an affirmative defense for failing to raise it in the initial answer, so long as it is raised before trial and the opposing party has time to respond in briefing and oral argument." *Id.* Accordingly, when reviewing a pleading, this Court should focus on ensuring "that a just result is accomplished, rather than requiring strict adherence to rigid forms of pleading." *Seiniger Law Office, P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 246, 178 P.3d 606, 611 (2008). "The purpose of a complaint is to inform the defendant of the material facts upon which the plaintiff rests the action." *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986). Accordingly, "the key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims

15

brought against it." *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 427, 95 P.3d 34, 45 (2004).

In its decision, the district court opined that "even a hyper-vigilant attorney would be unable to decipher [the Complaint] as [containing] a possible apparent authority cause of action." Not only does the district court underestimate the competence of Idaho attorneys, but it mischaracterizes apparent authority as a theory giving rise to a cause of action.

Apparent authority is a theory by which an agency relationship arises between a principal and a third-party. It is one of only three theories of agency available under Idaho law. One consequence of an agency relationship is that the principal becomes liable for the torts committed by the agent within the scope of agency. However, apparent authority is not itself a cause of action; rather, it is a legal theory through which agency arises.

"Under notice pleading, a party is no longer slavishly bound to stating particular theories in its pleadings." *Seiniger Law Office*, 145 Idaho at 246, 178 P.3d at 611. Rather, a party is required to state an underlying cause of action and the facts from which that cause of action arises. In the Complaint, Appellants sufficiently stated the underlying cause of action in Count 1, when it stated that "defendants, as providing health services to the public, owed the plaintiffs' decedent, Ellery Navo, and the plaintiffs, as heirs, a duty of care" and "that duty of care required that the defendants and their agents failed [sic] to exercise their best medical judgment and render care consistent with the local standard of care."

Clearly defendants stated a cause of action for negligence. It is further evident from the inclusion of the term "agents," that Appellants were seeking to hold BMH liable for the negligence of its agents. BMH's failure to expressly denote Sayre and Monroe as agents is not fatal. A reasonable attorney would presume that Sayre and Monroe, as independent contractors and the only other named defendants, would be viewed by Appellants as agents of BMH. This is further evidenced from the fact that the Complaint alleges that "Ellery's condition was not properly monitored or managed by the [sic] Monroe, Sayre and other Bingham Memorial personnel."

Accordingly, the Complaint was sufficient to put defendants on notice that Appellants sought to hold BMH liable for Sayre and Monroe's actions. Indeed, BMH evidently recognized this possibility—in its motion for summary judgment it addressed at length why BMH was not liable for the torts of Sayre and Monroe. If BMH's attorneys were not on notice that Appellants

16

would attempt to hold BMH liable for Sayre's and Monroe's negligence, then it makes little sense that BMH would address them in its motion for summary judgment.

**C.      The district court erred in finding that no genuine issues of material facts existed as to whether Sayre was BMH's agent under a theory of apparent authority.**

We now look to whether there are genuine issues of material facts regarding whether BMH's conduct led Navo to reasonably believe that Sayre was acting on BMH's behalf, and further, whether Navo accepted Sayre's services under the reasonable belief that such services were rendered on behalf of BMH.

"[A] hospital may be found vicariously liable under Idaho's doctrine of apparent authority for the negligence of independent personnel assigned by the hospital to perform support services." *Jones v. Health S. Treasure Valley Hosp.*, 147 Idaho 109, 116, 206 P.3d 473, 480 (2009).

> The standard for apparent authority stated in section 2.03 of the Restatement (Third) of Agency and section 429 of the Restatement (Second) of Torts has two essential elements: 1) conduct by the principal that would lead a person to reasonably believe that another person acts on the principal's behalf, *i.e.,* conduct by the principal 'holding out' that person as its agent; and 2) acceptance of the agent's service by one who reasonably believes it is rendered on behalf of the principal.

*Id.*

In order to survive summary judgment, Appellants must present evidence to the court sufficient to create an issue of material fact as to each of the two elements of apparent authority. In reviewing the evidence presented by Appellants, this Court is required to make every inference in favor of the Appellants, but it cannot view bare assertions without evidence as sufficient to create an issue of material fact.

With respect to the first element, Appellants allege that the Admission Form, which was on BMH letterhead, led Navo to reasonably believe Sayre was BMH's agent. The subsection titled "Legal Relationship Between Hospital and Physician" of the Admission Form only references physicians as being "independent contractors . . . not employees or agents of the hospital." Notably, the legal relationship between BMH and CRNAs is not addressed; therefore, it is reasonable to interpret the Admission Form as having no apparent bearing on the relationship between Sayre, a CRNA not a physician, and BMH. Furthermore, the Anesthesia and Procedure Consent Form does not affirmatively state that Sayre is not BMH's agent; rather, it merely states, on BMH letterhead, that "I understand that there will be a fee for this anesthetic

17

or procedure and that it will be in addition to the hospital or other physician's fee . . . ." The fact that the anesthetic fee is separate from that of the hospital or other physician's fee may imply that Sayre is not an employee or agent of BMH; however, such an interpretation is not consistent with the requirement to draw all reasonable inferences in Appellant's favor. It would be equally reasonable for a jury to find that Navo believed Sayre was an agent or employee of BMH due to the fact that it was not expressly stated otherwise on the Anesthesia and Procedure Consent Form.

Turning to the second element, there is a genuine issue of material fact regarding whether Navo accepted Sayre's services under the reasonable belief that such services were rendered on behalf of BMH. BMH contends that the signed Admission Form demonstrates that Navo understood Sayre was not an employee or agent of BMH. However, as stated above, it would be reasonable for a factfinder to believe that the Admission Form has no bearing on the legal relationship between BMH and CRNAs. Further, it could be argued that Navo signed the Anesthesia and Procedure Consent Form with the belief that Sayre was acting as BMH's agent. That is, by signing the Anesthesia and Procedure Consent Form, which did not affirmatively state that Sayre was not BMH's agent, Navo may have accepted Sayre's services with the belief that Sayre was acting as BMH's agent.

In support of its holding that a hospital may be found vicariously liable under Idaho's doctrine of apparent authority for the negligence of independent personnel, this Court quoted the Illinois Supreme Court as follows:

> [I]t is the hospital, and not the patient, which exercise [sic] control not only over the provision of necessary support services, but also over the personnel assigned to provide those services to the patient during the patient's hospital stay. *To the extent the patient reasonably relies upon the hospital to provide such services, a patient may seek to hold the hospital vicariously liable under the apparent agency doctrine for the negligence of personnel performing such services even if they are not employed by the hospital.*

*Jones*, 147 Idaho at 114, 206 P.2d at 478 (emphasis in original) (quoting *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill.2d 147, 305 Ill.Dec. 43, 854 N.E.2d 635 (2006)). Here, drawing all reasonable inferences in Appellant's favor, genuine issues of material facts exist regarding whether BMH's conduct led Navo to reasonably believe that Sayre acted on BMH's behalf and whether Navo accepted Sayre's services under the reasonable belief that such

service was rendered on behalf of BMH. Accordingly, we vacate the district court's summary judgment order and remand for further proceedings.

**D.      There is no prevailing party because this Court vacated the grant of summary judgment. Therefore, analyzing BMH's cross-appeal is no longer necessary.**

This Court's decision vacating the grant of summary judgment means there is no prevailing party. BMH's cross-appeal fails because it is not a prevailing party at this time. For the same reason, we vacate the award of costs and attorney fees to BMH.

**E.      No party is entitled to attorney fees on appeal.**

Attorney fees under Idaho Code section 12-121 are only appropriate where the entire appeal was "pursued frivolously, unreasonably, and without foundation." *Snider v. Arnold*, 153 Idaho 641, 645, 289 P.3d 43, 47 (2012). All parties' arguments were cogent, well researched, and had at least some foundation. Accordingly, no party is entitled to attorney fees on appeal.

Appellants are entitled to costs on appeal as the prevailing party.

## VI. CONCLUSION

We vacate the district court's grant of summary judgment and award of costs and attorney fees and remand for further proceedings. Costs on appeal to appellants.

Chief Justice J. JONES and Justices EISMANN, BURDICK and HORTON, CONCUR.