# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket Nos. 48479 & 48499

| | | |
|---|---|---|
| In the Matter of:  Jane Doe II, <br> A Child Under Eighteen (18) Years of Age. <br> --------------------------------------------------- <br> JOHN DOE I and JANE DOE I, <br> Husband and Wife, <br><br>     Petitioners-Respondents, <br><br> v. <br><br> JANE DOE (2020-49), <br><br>     Respondent-Appellant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | <br><br><br><br><br> Boise, April 2021 Term <br><br> Opinion Filed: August 4, 2021 |
| In the Matter of:  Jane Doe II, <br> A Child Under Eighteen (18) Years of Age. <br> --------------------------------------------------- <br> JOHN DOE I and JANE DOE I, <br> Husband and Wife, <br><br>     Petitioners-Respondents, <br><br>  v. <br><br> JOHN DOE (2020-52), <br><br>     Respondent-Appellant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Melanie Gagnepain, Clerk |

Appeal from the Magistrate Court of the Seventh Judicial District, State of Idaho, Bonneville County. Steven A. Gardner, Magistrate Judge.

The judgment of the magistrate court is reversed, and the case is remanded to the magistrate court with instructions to dismiss the petition without prejudice.

Rocky L. Wixom, Office of the Public Defender, Idaho Falls, for appellant Mother.

Neal S. Randall, Office of Conflict Counsel, Bonneville County Public Defender, Idaho Falls, for appellant Father.

Kevin B. Homer, Idaho Falls, for respondents Jane Doe I and John Doe I.

1

STEGNER, Justice.

This case presents a dilemma as old as that presented to Solomon: Who should be entrusted to parent a child? This is an appeal from an order terminating the parental rights of Jane Doe (Mother) and John Doe (Father), a married couple who are the biological parents of E.W. (Child). Mother and Father were both incarcerated from 2015 until 2020. Mother gave birth to Child while incarcerated and asked her friend Jane Doe I (Guardian Mother) and her husband John Doe I (Guardian Father) (collectively, "Guardians") to care for Child until Mother was released. Guardians have raised Child since her birth and presently act as legal guardians for her. Guardians filed a petition seeking to terminate the parental rights of Mother and Father and to adopt Child.

A termination trial was held by the magistrate court, after which the magistrate court terminated the parental rights of both Mother and Father. The magistrate court found that Mother had neglected Child and was unable to discharge her parental responsibilities. The magistrate court further found that Father had abandoned and neglected Child and was also unable to discharge his parental responsibilities. The magistrate court then granted Guardian's petition for adoption. For the reasons set out below, we reverse the magistrate court's judgment and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Mother and Father were both convicted in federal court of Conspiracy to Commit Wire Fraud in 2015. Both Mother and Father served their sentences in different federal penal facilities in Texas. While incarcerated, Mother gave birth to Child on September 2, 2015. Mother arranged to have her friend, Guardian Mother, care for Child while Mother served the remainder of her sentence. Guardians agreed to care for Child temporarily after Mother assured them that her incarceration would be for approximately five months. Upon giving birth, Mother spent one hour with Child before Child was placed in the custody of Guardians. Guardians are the legal guardians of Child, and she has lived in their household continuously since her birth.

Mother and Father were both incarcerated for approximately five years. During her incarceration, Mother made various attempts to contact Child through Guardian Mother via email and letters. Mother consistently asked how Child was doing and if Guardian Mother could provide photos of her. Mother also tried to arrange video visits with Child. Guardian Mother

2

would sometimes oblige and offer status updates or send photos of Child, but refused the majority of Mother's requests for photos and visitation by video. Although Mother communicated with Father daily while incarcerated, Father made no similar attempts to contact Child during his incarceration and has never met Child in person. While incarcerated, neither Mother nor Father contributed financially to Child's upbringing by Guardians. After her release, Mother continued to seek updates on Child as well as in-person contact. Guardians allowed Mother to visit Child one time in the presence of other family members. Father was not present for this visit.

Mother was released from custody in March 2020. Father was released a few months before the termination trial began on September 10, 2020. At that time, both Mother and Father faced approximately three years of federal supervision upon their release. They also owed restitution to their victims of approximately $1.5 million. In addition, prior to their incarceration, Mother and Father had their parental rights to their six older children terminated in the state of Florida. The reason for this termination was because Mother and Father had fled to the Bahamas with their children to evade arrest by federal authorities after they were indicted on wire fraud charges. Mother and Father's six older children were subsequently adopted by Mother's siblings.

### B. Procedural Background

While Mother and Father were incarcerated, Guardians filed a Verified Petition for Termination of Parent and Child Relationship and for Adoption on December 27, 2017, in Bonneville County, Idaho.[1] The Petition alleged that the parental rights of Mother and Father should be terminated "pursuant to Idaho Code § 16-2001, *et seq.*, including, but not limited to, Idaho Code § 16-2005(1)(d), (1)(e), (3) and/or (4)." The Petition made no factual allegations as to why Mother's and Father's parental rights should be terminated.

Pursuant to Idaho Code section 16-1507(3), the magistrate court appointed counsel for Mother and Father and ordered the Idaho Department of Health and Welfare (IDHW) to conduct an investigation to determine the veracity of the allegations contained in the petition on December 29, 2017. Thereafter, Mother requested payment for costs associated with retaining an expert witness to "investigate potential witnesses, evidence, and defenses," arguing that without an expert, Mother's ability to prepare a defense would be limited. Mother argued that because the magistrate court had appointed a public defender to represent her, she was "entitled to request

---

[1] Guardians reside in Bonneville County, Idaho, with Child, thus affording jurisdiction in Idaho. I.C. § 16-2003.

3

funds for trial preparation from the court." Mother argued that although a public defender typically represents individuals facing criminal charges, the termination of parental rights also involves a fundamental right: the right to parent. Mother argued that because the two situations are analogous, she should be able to obtain the payment of expert witness fees in order to respond to the petition seeking termination of her parental rights.

In response, Guardians argued that there is no right to the payment of expert witness fees in a case seeking the termination of parental rights. Guardians also argued that the denial of expert witness fees would not prejudice Mother because the IDHW would be conducting its own independent investigation, purportedly free from any bias toward either party. The magistrate court denied Mother's motion for funds to retain an expert, finding that Mother's "cited authority applies to rights of a defendant in a criminal law case, not in a civil parental rights termination matter." The magistrate court continued, "the record before the [c]ourt does not show there is a reasonable likelihood that [Mother's] expert's opinion on the long-term emotional effects that termination will have on [Child] or that an assessment of her connection to [Guardians] will materially assist [Mother] in the preparation of her defense."

Guardians then filed a motion for an investigation by the Division of Family and Community Services of the IDHW to investigate and submit a report based on Mother's and Father's decision to contest the termination of their parental rights. Mother responded to the Verified Petition on April 30, 2019, arguing that termination should not occur because the agreement with Guardians to care for Child was only meant to be temporary and termination would not be in Child's best interest. The magistrate court continued the trial date in order to accommodate Mother's release from prison.

After Mother's and Father's release and return to Twin Falls, Idaho, the parties attempted mediation, which was unsuccessful. A two-day bench trial began on September 10, 2020. At the conclusion of the trial, Guardians submitted their proposed findings of fact and conclusions of law along with their post-trial memorandum. Mother also submitted proposed findings and conclusions, asserting that Guardians' petition had not provided her with sufficient notice of the specific conduct for which Guardians were seeking termination of Mother's parental rights. Mother argued that Guardians' petition failed to allege a "short and plain statement of the facts" justifying termination.

The magistrate court entered its Findings of Fact and Conclusions of Law on October 30,

2020, granting Guardians' petition for termination of Mother's and Father's parental rights. The magistrate court also granted Guardians' request to adopt Child. The magistrate court found that "the best interest of the minor child will be promoted and protected if the parental relationship between her and [Mother and Father] is terminated and she is adopted by [Guardians.]" Regarding Mother's claim that she was not sufficiently notified by the Verified Petition of the grounds that were being pursued to terminate her parental rights, the magistrate court found that Mother and Father had sufficient notice. The magistrate court found that because Guardians had pleaded that termination should be granted "pursuant to Idaho Code section 16-2001 *et seq.*, '**including but not limited to**' Idaho Code section 16-2005(1)(d), (1)(e), (3), and/or (4)," "[Mother and Father] were on notice that all of the grounds and circumstances contemplated by Idaho Code § 16-2005 would be subject to proof at trial and decision by the court and any suggestion by [Mother and Father] that the court is or may be limited in its review of Idaho Code § 16-2005 is not well taken." (Emphasis in original.)

In its Conclusions of Law, the magistrate court first found that Idaho Code section 16-2005(1)(e) was inapplicable to Mother and Father because they were no longer incarcerated, nor was there any evidence of likely future incarceration. Next, the magistrate court considered Idaho Code section 16-2005(1)(a): abandonment. Notably, the ground of abandonment—and the facts supporting such a claim—had not been specifically pleaded by Guardians in their Petition, nor had they sought to amend their Petition prior to the magistrate court's judgment to add it. The magistrate court found that Father had abandoned Child because he made no direct attempts to meet or contact Child during or after his period of incarceration. The magistrate court then found that Mother had not abandoned Child due to her efforts to contact Child and receive updates regarding her health and well-being.

The magistrate court next considered Idaho Code section 16-2005(1)(b): neglect. Again, the grounds of neglect—and the facts supporting such a claim—had not been specifically pleaded by Guardians. The magistrate court found that both Mother and Father

> have neglected the minor child by the fact of their own incarceration. They left the minor child for five (5) years to the care of [Guardians,] with whom the minor child has a significant bond and trust. The very fact of incarceration can alone constitute neglect. See *Idaho Dep't. of Health & Welfare v. Doe*, 151 Idaho 846, 852, 264 P.3[d] 953, 959 (2011). In addition, [Father,] for his part, has neglected the minor child for all the same reasons as stated above where the court concluded that [Father] had abandoned the minor child. For [Mother's] part, while she made

5

some attempts to have contact with the minor child, such efforts have been marginal, sporadic, and half-hearted, at best, and do not act as a defense to her neglect for virtually the entirety of the life of the minor child.

Next, the magistrate court considered Idaho Code section 16-2005(1)(d), inability to discharge parental responsibilities. The court found that Mother and Father would not "be able to discharge their parental responsibilities and such inability will continue for a prolonged indeterminate time. This is shown in part by their unstable living conditions, and their enormous debt in restitution for criminal convictions." The magistrate court went on to discuss the findings of fact from the prior termination of parental rights proceeding in Florida, ultimately concluding that Mother and Father "cannot and will not be able to discharge their parental responsibilities for the minor child herein and that such inability will injure the health and well-being of the minor child." The magistrate court commended Mother for taking parenting classes while incarcerated, but minimized her efforts by stating that it "does not believe her participation in those courses will make her any more available or able to discharge her parental responsibilities toward the minor child in the case now or in the foreseeable future." The magistrate court entered its judgment on October 30, 2020.

On November 19, 2020, Mother filed a Motion to Correct Judgment, requesting a correction of the judgment to include "a resolution of the Respondent's [R]ule 12(b)(6) claim of insufficient factual notice via a failure to include, pursuant to IRCP 8, '[a] short and plain statement of the facts' in the Verified Petition." Mother asserted that the magistrate court "did not make a finding that such claim was denied in its October 30th 2020 Judgment. The Judgment cannot therefore be considered as a 'final judgment' until the resolution of all claims including the Respondent's claim." (Citing I.R.C.P. 54(a)-(b); and, *In re Doe*, 155 Idaho 660 (2013) (emphasis in original)). The magistrate court granted Mother's motion and entered a Corrected Judgment on December 1, 2020, denying Mother's claim of insufficient pleadings.

Mother filed a notice of appeal on December 4, 2020. Father filed a separate notice of appeal on December 14, 2020. Mother also filed an amended notice of appeal on December 14, 2020. While the appeals were filed separately, the appeals were joined for purposes of creation of the record.

## II. STANDARD OF REVIEW

"In reviewing the district court's order granting the motion to dismiss, the standard of review is the same as that used in summary judgment." *McCabe v. Craven*, 145 Idaho 954, 956,

188 P.3d 896, 898 (2008).

> "This Court exercises de novo review of a grant of summary judgment and the 'standard of review is the same as the standard used by the trial court in ruling on the motion for summary judgment.'" *AED, Inc. v. KDC Invest., LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013) (quoting *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Marek v. Hecla, Ltd.*, 161 Idaho 211, 220, 384 P.3d 975, 984 (2016); *see also Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) ("If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate."). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 209, 76 P.3d 951, 953 (2003).

*Fell v. Fat Smitty's L.L.C.*, 167 Idaho 34, 37, 467 P.3d 398, 401 (2020).

### III.   ANALYSIS

At the outset, we note the unusual nature of Mother's and Father's appeals. In the magistrate court, Guardians proceeded against Mother and Father in one action, presumably because Mother and Father are both biological parents of Child, are still married, and reside together. However, Mother and Father did not join their appeals and instead each filed a notice of appeal, resulting in two docket numbers. For purposes of judicial economy this Court has ordered the appeals joined, and this opinion addresses both Mother's and Father's appeals.

Although the case proceeded against Mother and Father jointly, Mother and Father were each appointed separate counsel to avoid any potential conflicts of interest. During the proceedings, Mother's counsel appears to have taken the lead in challenging the petition for termination. Father's counsel, while present at every hearing and at trial, did not independently file a responsive pleading, nor did he file proposed findings of fact and conclusions of law after the trial. Instead, Father's counsel seemingly relied on Mother's counsel to argue on behalf of both parties without explicitly joining in Mother's briefing as could have been done.

On appeal, Mother and Father each filed separate appellate briefs. Mother's brief thoroughly argued several issues. In contrast to Mother's briefing, Father's brief on appeal lacks substantive argument on a number of issues raised by Mother. We do not condone briefing on appeal that does not sufficiently raise arguments such that we can decide their merits. However,

due to the fundamental nature of the right to parent, along with Mother's and Father's ongoing marriage and resumption of their relationship following their release from federal prison, we agree with the magistrate court's finding that "the interests of [Mother and Father] cannot be severed," because Mother's and Father's "defenses and cases were in conformity with one another."

**A. Both Mother's and Father's appeals are timely.**

As a preliminary matter, Guardians argue that Mother's and Father's appeals are untimely pursuant to Idaho Appellate Rule 12.2(a)(1). The magistrate court entered its Judgment on October 30, 2020. Mother subsequently filed a timely motion to correct the judgment, arguing that it did not dispose of her claim of lack of factual notice. Mother argued that a judgment is not final until it resolves all claims between the parties. The magistrate court then issued a Corrected Judgment denying Mother's claim of lack of notice in the pleadings on December 1, 2020.

On appeal, Guardians argue that Idaho Appellate Rule 12.2(a)(1) requires an appeal from a termination or adoption proceeding to be filed within fourteen days. Guardians also anticipate Mother and Father's argument that the original judgment was not yet final, and in turn contend that Rule 12.2 is "jurisdictional, and that no such post-trial motion can overcome or supersede the application of that Rule."

In response, Mother argues that because the magistrate court's initial judgment did not resolve her claim of insufficient notice, it was not a final, appealable order as required by Idaho Rule of Civil Procedure 54(a)(1). Mother contends that the magistrate court's Corrected Judgment, issued on December 1, 2020, "was the only Judgment entered that met the definitions of an appealable 'final' judgment."

> Idaho Appellate Rule 12.2 requires that an
>
> appeal from any final judgment, as defined in Rule 54(a) of the Idaho Rules of Civil Procedure, granting or denying a petition for termination of parental rights or granting or denying a petition for adoption shall be made only by physically filing a notice of appeal with the clerk of the district court within fourteen (14) days from the date file stamped on the judgment.

I.A.R. 12.2(a)(1). In turn, Idaho Rule of Civil Procedure 54(a)(1) provides that "[a] judgment is final if . . . judgment has been entered on *all* claims for relief . . . ." I.R.C.P. 54(a)(1) (italics added).

Mother had raised her claim of insufficient pleadings below in her proposed Findings of Fact and Conclusions of Law. The magistrate court's judgment made no mention of this claim;

8

instead, only the Corrected Judgment disposed of this particular claim by denying it in the Corrected Judgment which was entered December 1, 2020. Mother then filed her notice of appeal just three days later on December 4, 2020. Therefore, Mother's appeal is timely. Father filed his separate notice of appeal on December 14, 2020, within the fourteen-day requirement prescribed by Rule 12.2(a)(1), therefore, his appeal is also timely.

**B. Guardians' Verified Petition failed to allege *any* facts supporting termination of Mother's and Father's parental rights, violating their due process right to notice regarding the bases upon which termination was sought.**

Mother first argues on appeal that because Guardians' Verified Petition alleged no facts, it failed to put her on notice of what conduct she would need to defend during the proceedings. Mother contends that the magistrate court's final judgment is "void for lack of subject matter jurisdiction" and that she "was not provided notice of what factual allegations she was defending."

Mother begins her argument by discussing the fundamental nature of parental rights, including the requirement of "fundamentally fair procedures" outlined in *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982). She then asserts that "Idaho Code [] specifically plainly requires [a] statement of factual grounds to be included in a termination pleading." (Citing Idaho Code § 16-2006h). Mother contends that the Verified Petition "reveals a lack of even the simplest 'short and plain statement' of factual grounds justifying termination." Mother acknowledges that the Petition references statutory grounds by citing Idaho Code section 16-2005(1)(d), 1(e), (3), and (4), but insists that the legal grounds cited "are mere blanket statements of law with zero application to any alleged facts whatsoever."

Mother's insufficiency of notice argument begins with the assertion that her due process rights were violated. Mother then recites several more general requirements for pleadings: "Modern pleading as reflected by I.R.C.P. 8(a)(1) requires only a simple[,] concise, and direct statement fairly apprising the defendants of claims and grounds upon which the claims rest." (Quoting *Myers v. A.O. Smith Harvestore Products, Inc.*, 114 Idaho 432, 439, 757 P.2d 695, 702 (Ct. App. 1988)). Mother again asserts that Guardians' petition alleged no facts whatsoever in support of termination.

Mother continues her argument with the contention that requiring her to defend herself against unknown factual allegations was "patently unfair and illegal," and that she was "prejudiced in the preparation of her defense." Specifically, Mother argues that she "had the right

to know not just what statutes she [was] accused of having violated but also the *factual manner* in which she allegedly violated them," and further that she "had the need to know [the] statutes she was being accused [of] violating as opposed to her co-defendant husband." (Italics in original).

Mother next attacks the legal grounds asserted in the Verified Petition. First, she contends that Idaho Code section 16-2005(3) "is not a factual or legal 'ground' for termination. Rather, it imposes upon a magistrate court the duty to [] terminate parental rights [only] if the court first determines [that] grounds exist and then only if termination would be in the 'best interests' of the child." Second, Mother notes that subsection (4) of Idaho Code section 16-2005 "provides grounds for termination if a parent gives legal consent." I.C. § 16-2005(4). Mother asserts that "[t]here was no factual allegation that [Mother] had ever consented or ever would consent to the termination." Indeed, there is no suggestion that Mother ever consented to the termination of her parental rights. Guardian Mother conceded that when Mother initially entrusted Child to her care, it was expressly intended as a temporary arrangement. Mother then sought contact with Child, which at various times was rebuffed by Guardian Mother. In the intervening years, Mother never consented to the termination of her parental rights. Further, Mother asserts that Guardians abandoned the issue of consent by failing to argue it at trial: "at no point did [Guardians] offer any evidence that [Mother] consented to the termination of her rights."

In response, Guardians contend that "the fact that the trial court was prepared to proceed with trial is evidence itself that the court felt it was completely aware of the factual issues that were to be presented at trial." Guardians further argue that Mother should have known which statutory grounds for termination she would have to defend by a simple process of elimination: arguing at the time of trial, there were "only three possible statutory grounds upon which the [Guardians] even *could have* proceeded," abandonment, neglect, and inability to discharge parental responsibilities. As a result, Guardians argue that Mother had a "clear, actual notice of the statutory grounds upon which [Guardians] intended to proceed at trial."

Idaho Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." I.R.C.P. 8(a)(2). Further, Idaho Code section 16-2006 provides that a "petition for the termination of the parent and child relationship shall include, to the best information and belief of the petitioner: . . . [t]he grounds on which termination of the parent and child relationship is sought." I.C. § 16-2006h.

Idaho employs a "liberal notice pleading standard,"

> intended to see justice done, and prevent the dismissal of a valid claim for a mere technical failing. However, the opposing party must be provided with notice of the underlying theories being pursued against them in order to adequately prepare for trial. Our notice pleading standard requires more than a naked recitation of facts from which a hyper-vigilant attorney could possibly foresee the possibility of a given cause of action. A plaintiff cannot, in his complaint, paint us a picture of a four-legged animal with fur and a tail labeled "cat" and then assert at summary judgment that the picture depicts a dog. Even where the Complaint, on its face, appears insufficient to place a reasonable defense attorney on notice of a cause of action, this Court may still find that pleading sufficient where the defendant responds to that cause of action in their answer.

*Brown v. City of Pocatello*, 148 Idaho 802, 809–10, 229 P.3d 1164, 1171–72 (2010).

"Idaho's 'notice pleading' system requires a plaintiff's complaint to 'state an underlying cause of action *and the facts from which that cause of action arises*.'" *Smith v. Glenns Ferry Highway Dist.*, 166 Idaho 683, 462 P.3d 1147, 1161 (2020) (quoting *Navo v. Bingham Mem'l Hosp.*, 160 Idaho 363, 375, 373 P.3d 681, 693 (2016) (italics added)).

In the context of termination proceedings, this Court has held that it is "not necessary [to] allege precisely which of the six subsections of I.C. § 16–2005 under which [the State] was proceeding. A simple and concise *statement of facts* is all that is necessary." *In Int. of Dayley*, 112 Idaho 522, 525, 733 P.2d 743, 746 (1987) (citing *Collard v. Cooley*, 92 Idaho 789, 793, 451 P.2d 535, 539 (1969)) (italics added). In *Dayley*, a father argued that his due process rights had been violated when the State's termination petition against him "failed to specify which of the six grounds for termination of parental rights set forth in I.C. § 16-2005 the state was alleging." *Id.* at 524, 733 P.2d at 745. This Court held that because the petition contained a paragraph of factual allegations—specifically that the father had failed to comply with his case plan with the Department of Health and Welfare—father had been "provided adequate notice that the state was seeking to terminate his parental rights." *Id.* at 525; 733 P.3d at 746.

A close examination of Guardians' Verified Petition and Mother's responsive pleading reveals a lack of factual and legal notice of the grounds sought to terminate Mother's and Father's parental rights. First, Guardians' Verified Petition contains no *factual* allegations regarding either Mother's or Father's conduct giving rise to the grounds alleged. Paragraph 12 of the Verified Petition states: "The parental rights of [Father] and [Mother] should be terminated pursuant to Idaho Code § 16-2001, *et seq.*, including, but not limited to, Idaho Code § 16-2005(1)(d), (1)(e), (3), and/or (4)." The remainder of the Petition only contains other

11

requirements of termination and adoption proceedings, including information describing each of the litigants and Child and the establishment of jurisdiction in the magistrate court. Guardians make no factual allegations regarding either Mother's or Father's conduct to support their request for termination.

We also note that neither Idaho Code section 16-2005(3) nor (4), the grounds pleaded by Guardians, are applicable as "grounds for termination." Subsection (3) allows termination to be granted only if the court separately finds that termination is "in the best interest of the *parent* and child."[2] I.C. § 16-2005(3) (italics added). Subsection (4) provides an alternate avenue for termination where a biological parent validly consents to the termination. I.C. § 16-2005(4). A finding of the best interests of the parent and the child is a *separate and additional* finding from one of the five grounds for termination enumerated in subsection (1) of section 16-2005. *See In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014) ("Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship."). Further, there is no suggestion that either Mother or Father ever consented to the termination of their right to parent Child, therefore subsection (4) is inapplicable to this case. Guardians seem to concede that consent has not been argued, as they failed to raise it either at trial or on appeal to this Court. Consequently, neither citation to subsection (3) nor (4) put Mother and Father on notice of the statutory grounds Guardians were alleging to support termination.

The grounds Guardians did allege in the Verified Petition were limited to Idaho Code subsections 16-2005(1)(d) and (1)(e). Section (1)(d) provides that a court may terminate parental rights if it finds that "[t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child." I.C. § 16-2005(1)(d). Section (1)(e) provides for termination when "[t]he parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority." I.C. § 16-2005(1)(e). Notably, Guardians failed to allege subsection (1)(b), which provides for termination upon a finding that "[t]he parent has neglected or abused the child," nor did they allege subsection (1)(a), which allows termination if the court makes a finding of abandonment. I.C. § 16-2005(1)(a)-(b). In its Findings of Fact and

---

[2] Importantly, the magistrate court only found that termination would be in the best interests of Child. The magistrate failed to make the necessary finding that termination would be in Mother's and Father's best interests, as required by Idaho Code section 16-2005(3).

Conclusions of Law, the magistrate court ultimately concluded that Mother had neglected Child by reason of her incarceration, and that Father had both abandoned and neglected Child for similar reasons.

Mother's response to the Verified Petition does not evince that she was put on notice of the grounds that were later pursued at trial by Guardians. For example, her response to paragraph 12 of the petition, the only paragraph to allege any specific grounds for termination, states "[Mother] denies the allegations contained in paragraph 12 of the Verified Petition for Termination of Parent and Child Relationship and for Adoption." Although a mother's acknowledgment of the claims against her can be used to find that a pleading provides sufficient notice, here, Mother's responsive pleading does nothing to demonstrate that she had acknowledged the specific grounds alleged for termination by Guardians—including the unpleaded grounds which were ultimately found and relied upon by the magistrate court. *See Brown*, 148 Idaho at 810, 229 P.3d at 1172.

We conclude that the Verified Petition was wholly inadequate in providing factual notice to what was being alleged. It failed to plead any conduct of either Mother or Father which would warrant termination of their parental rights. At most, Mother and Father were only notified of Guardians' recitation of legal grounds for termination (Idaho Code subsections 16-2005(1)(d)—inability to discharge parental responsibilities—and section 16-2005(1)(e)—ongoing incarceration), one of which (ongoing incarceration) was found inapplicable by the magistrate court. The other of which (inability to discharge parental responsibilities) also appears inapplicable given that Mother and Father had secured a home and were earning roughly $5,500 per month. The Verified Petition also contains no specific factual allegations of either parent's conduct as it relates to any ground for termination. *See Brown*, 148 Idaho at 810, 229 P.3d at 1172 (describing that Idaho's liberal pleading standards are "intended to prevent the dismissal of a valid claim for a mere technical failing"). While Idaho's notice pleading standards are liberal, Guardians' petition fails to meet that standard by failing to even allege a "short and plain" statement of facts. As a result, the petition deprived Mother and Father of their due process right to adequate notice, particularly in light of Mother's repeated and consistent objections.

In the face of the fundamental right to parent, a pleading so devoid of factual allegations flies in the face of due process principles. *See Santosky*, 455 U.S. at 754 (holding that the State must "provide parents with fundamentally fair procedures" before termination of parental rights

13

may occur). Therefore, we hold that Guardians' Petition for Termination violated Mother's due process rights because it failed to assert any factual allegations against either natural parent. While Father did not raise this issue in his separate briefing on appeal, due to the conformity of defenses Mother and Father presented at trial and the fundamental nature of the right to parent, along with Mother's and Father's ongoing marriage and resumption of their relationship following their release from federal prison, we agree with the magistrate court's finding that "the interests of [Mother and Father] cannot be severed" and hold that Father's due process rights were also violated as a result of the deficient petition.

Because we hold that the pleadings were deficient, we need not reach the remainder of Mother's and Father's arguments on appeal.

## IV. CONCLUSION

Based on the foregoing, the judgment of the magistrate court is reversed, and the case is remanded to the magistrate court with instructions to dismiss the petition without prejudice. Mother and Father are awarded costs on appeal as a matter of right.

Chief Justice BEVAN, Justices BURDICK, BRODY, and MOELLER CONCUR.